**NEWARK MOTOR INN CORP. and Newark Motor Inn Company, Plaintiffs,**

v.

**HOLIDAY INNS, INC. and American Motor Inns, Inc., Defendants.**

**Civ. A. No. 77–582.**

United States District Court, D. New Jersey.

June 27, 1979.

---

James M. La Rossa by Andrew B. Melnick, New York City, for plaintiffs.

Cadwalader, Wickersham & Taft by Claude P. Bordwine, New York City, and, Lowenstein, Sandler, Brochin, Kohl & Fisher, by Murray J. Laulicht, Newark, N. J., for defendant Holiday Inns, Inc.

Pitney, Hardin & Kipp by Richard F. Collier, Jr., Morristown, N. J., for defendant American Motor Inns, Inc.

## OPINION

MEANOR, District Judge.

Presently before the court is defendant Holiday Inns' (HI) motion for summary judgment on the First Cause of Action alleged in plaintiffs' (NMIC) amended complaint. For the reasons stated hereafter, HI's motion will be granted.

This lawsuit arises out of a complex litigation initiated in this district in 1972. Briefly stated, in December 1967 NMIC entered into a franchise agreement with HI and constructed a motel at Newark Airport. NMIC owned and operated the motel under the franchise agreement. In 1971, defendant American Motor Inns (AMI), HI's single largest franchisee with approximately 48 Holiday Inn motels throughout the nation, applied to HI for a franchise to build a Holiday Inn on some property it had acquired in Elizabeth, New Jersey next to the airport and about a mile from the location of NMIC's motel. Implementing procedures established for consideration of new franchise applications, HI requested input from its existing franchisees nearest to AMI's proposed site. NMIC responded, asserting that the grant of a franchise to AMI at the Elizabeth location would substantially affect its business. AMI's application was denied. In 1972, AMI brought suit against HI in Civil No. 1623–72 alleging, *inter alia*, violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and naming NMIC as co-conspirators with HI (although not as party defendants). After a lengthy non-jury trial before the Honorable Leonard I. Garth, U. S. C. J. (sitting by designation as district judge), HI was found to have conspired with NMIC to deny AMI the franchise for the Elizabeth property. Judge Garth made specific findings of fact and conclusions of law which are reported in *American Motor Inns, Inc. v. Holiday Inns, Inc.*, 365 F.Supp. 1073 (D.N.J.1973). The Court of Appeals for the Third Circuit affirmed Judge Garth's findings of fact and that a conspiracy existed between HI and NMIC with respect to AMI's application for a franchise at the Elizabeth property. *American Motor Inns, Inc. v. Holiday Inns, Inc.*, 521 F.2d 1230, 1242–44 (3d Cir. 1975).

Pertinent here is AMI's Prayer for Relief in the 1972 action which requested in part:

4. That the Court issue an injunction requiring Holiday to act on any fu-

ture application by AMI for a Holiday Inn license agreement based solely on proper and appropriate business considerations.

*See* Exhibit A appended to HI's Answer and Counterclaim filed September 29, 1977. At the conclusion of his opinion, Judge Garth stated:

> In addition, plaintiff [AMI] may move on such an interim basis for the relief sought in paragraph 4 (franchise operations), but only with regard to the Elizabeth property.

*American Motor Inns, Inc. v. Holiday Inns, Inc., supra,* 365 F.Supp. at 1099. On September 11, 1973, just six days after he filed his opinion, Judge Garth issued an Interim Order which ordered at ¶ 3:

> 3. With respect to any application which may hereafter be submitted by plaintiff [AMI] for a franchise to own or operate a Holiday Inn on its 10.2 acre tract of land in Elizabeth, New Jersey, defendant Holiday Inns, Inc. is hereby required to consider and act upon any such application based solely upon proper and appropriate business considerations consistent with the September 5, 1973 opinion of the Court.

*See* Exhibit M appended to affidavit of Peter M. Brown, Esq., counsel for HI, submitted in support of HI's motion for partial summary judgment (hereafter Brown Affidavit).

A week after the Interim Order was issued, September 18, 1973, AMI made application to HI for a franchise at the Elizabeth location. *See* Exhibit N appended to Brown Affidavit. On September 26, 1973, Charles Collins, HI's General Counsel, sent a memorandum to Donelson Lake, HI's Director of Franchise Sales, along with AMI's application for reconsideration of the franchise involved in the lawsuit. The memorandum directed Lake:

> Please start this out as an application and investigate it in the regular way except there will be no proximity letters sent out and there will be no contact with any other franchise holders about this matter.

The Franchise Department will just have to work with other Holiday Inn departments internally to get all the necessary data. Some of the factors which should be investigated and considered are listed below:

1. The financial stability of the applicant.
2. The previous relevant business experience of the applicant.
3. The exposure and accessibility of the site.
4. Whether or not there is sufficient potential to support the proposed facility requested by the applicant.
5. The expansion or condition of adjacent business concerns.
6. The population trend.
7. The proposed expansion of transportation facilities nearby.
8. The location of other existing hotels and motels.
9. The degree of their modernization.
10. Their average occupancy.
11. Their revenues.
12. Primary source of business.
13. Any and all other factors which would have any bearing or relationship upon the application being considered.

*See* Exhibit C appended to affidavit of James M. La Rossa, Esq., counsel for NMIC submitted in opposition to HI's motion for partial summary judgment (hereafter La Rossa Affidavit).

After the filing of the Interim Order on September 11, 1973, the parties, pursuant to the direction of the Court, were required to settle the form of the decree so that all aspects of the litigation might be concluded. On January 30, 1974, Judge Garth signed a second Order which dealt with all substantive relief other than damages and incorporated the provisions of the Interim Order relating to the Elizabeth property. This January 30th Order was consented to by both parties. *See* Amended Memorandum Order and Opinion of Judge Garth filed September 9, 1974 and appended as Exhibit P to the Brown Affidavit.

The Order of January 30, 1974 contains the following provisions:

5. Defendant [HI] is hereby directed to grant plaintiff's [AMI's] application with respect to its 10.2 acre tract of land in Elizabeth, New Jersey . . . and to issue a "Commitment Agreement to Issue A License Agreement" to plaintiff or a subsidiary thereof for a Holiday Inn on said property.

6. The provisions of this Order shall apply to the defendant, Holiday Inns, Inc., its officers, directors, employees and agents and to its successors and assigns and to all persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise.

See Exhibit F appended to La Rossa Affidavit.

The present action by NMIC is predicated upon the alleged wrongful conduct of HI and others surrounding the grant of the franchise at Elizabeth, New Jersey to AMI. NMIC alleges that HI's actions were taken in bad faith without weighing any proper and appropriate business considerations, and was in derogation of the duties that HI, as franchisor, allegedly owed to its franchisee, NMIC. As a result of this alleged wrongful conduct, NMIC contends that it has suffered major financial losses culminating in the foreclosure of its property. NMIC seeks $20,000,000 in damages from HI and AMI.

This suit arrived in this court with a history established subsequent to the culmination of the 1972 litigation before Judge Garth. It was commenced in the Supreme Court of New York, Kings County, by service of a Summons with Notice without a Complaint. NMIC thereafter served a motion for an order pursuant to CPLR 3102(c) to depose HI in order to frame a complaint. NMIC's affidavit in support of that motion set forth allegations identical to those set forth in the amended complaint in this action. [Compare Affirmation of Charles Beller dated July 26, 1976 and made part of the record annexed to HI's Petition for Removal filed with the Clerk of the U.S. District Court for the Eastern District of New York on January 4, 1977 with the Amended Complaint in the within action.] Justice Arthur S. Hirsch of the Supreme Court of New York denied NMIC's motion on the basis that NMIC had failed to demonstrate a valid cause of action against HI. See Order of Justice Hirsch dated August 26, 1976 and made part of Exhibit A appended to HI's Petition for Removal to the U.S. District Court for the Eastern District of New York filed December 13, 1976. After NMIC finally served the complaint in the Supreme Court of New York, HI removed the action to the U.S. District Court for the Eastern District of New York where it was assigned to the Honorable Jack B. Weinstein. HI then moved to dismiss the suit for failure to state a claim upon which relief can be granted. HI's moving papers and memoranda submitted in support of that motion are essentially identical to those submitted on the instant motion for partial summary judgment. See Notice of Motion and Affidavit of Peter M. Brown filed December 22, 1976 in 76 Civ. 2241 (E.D.N.Y.) and made part of the file transmitted to this district. In a Memorandum and Order filed March 9, 1977, Judge Weinstein denied HI's Rule 12(b)(6) motion but suggested that "[i]n view of the factual issues raised at the hearing, a motion for summary judgment following further discovery might well be in order." On his own initiative, Judge Weinstein ordered the action transferred to this district on the ground that the District of New Jersey is the more appropriate forum since interpretation of Orders issued by this court might be necessary for a determination of the issues.

In all motions since the lawsuit began in the Supreme Court of New York in the summer of 1976, HI has contended that NMIC is attempting to collaterally attack the findings of fact, conclusions of law, judgment and orders in Civ. No. 1623–72, the earlier action before Judge Garth. NMIC counters, asserting that HI misconceives the thrust of its Amended Complaint in that this lawsuit arises from factual oc-

currences which took place *after* Judge Garth issued his September 5, 1973 Opinion which found that HI and NMIC had conspired with respect to AMI's application for a franchise at the Elizabeth property in violation of section 1 of the Sherman Act.

NMIC alleges that HI and AMI were no longer in an adversarial posture when deciding on the language of the January 30th Order; they were, instead, in the final steps of negotiating a merger agreement by which HI would acquire AMI. Because of the relative positions of HI and AMI during the period between the September 5, 1973 Opinion and the entry of the January 30, 1974 Order in attempting to negotiate a merger, NMIC asserts that HI consented to the entry of that Order in derogation of duties it allegedly owed to NMIC, its franchisee. In other words, the actions of HI in negotiating a merger and consenting to the entry of the January 30th Order amounted to "self-dealing" resulting in the injury complained of in the First Cause of Action in the Amended Complaint. It must be recognized at once that there was nothing surreptitious or untoward about the posture of the parties prior to the entry of the January 30th Order. As a matter of fact, the hearing on AMI's claim for damages, attorney's fees and the awarding of costs was specifically deferred until June of 1974 because of the possible acquisition of AMI by HI. This was so stated at ¶ 10 of the January 30th Order.

NMIC's argument that HI and AMI were no longer in combative positions when deciding on the language of the January 30th Order is fallacious. Although it is undisputed that the merger negotiations were ongoing prior to the September 5th Opinion and continued beyond the January 30th Order, it is abundantly clear that HI knew that it was facing payment of substantial damages and attorney's fees as a result of the determination by Judge Garth of Sherman Act violations. In its Form 10-K Annual Report to the Securities and Exchange Commission for the fiscal year ended December 28, 1973, HI discussed the proposed acquisition of AMI and refers to "Item 5. Legal Proceedings" at pages 18–19 of the Exhibits to the 10-K Report. Item 5, subtitled "The AMI Lawsuit," states in part:

The [January 30th] order further provides that a hearing will be held on AMI's claim for damages and attorney's fees on July 8, 1974, unless the merger becomes effective before that date. In the event the merger becomes effective before that date, AMI, as a Company subsidiary, will not seek additional relief. Consequently, *if the merger is not approved or consummated, AMI will seek to obtain additional equitable relief regarding the Company's licensing policies and license agreements and will undertake to prove its claim for damages and apply for attorney's fees.* As to the site in Elizabeth, New Jersey, such damages are claimed to be approximately $4.5-million after trebling in accordance with the antitrust laws. With respect to other locations, the amount of damages to be claimed is not presently determinable. *The Company will vigorously contest claims for additional equitable relief, damages or attorney's fees.* (Emphasis added.)

*See* Exhibits to Form 10-K Annual Report appended as Exhibit H to La Rossa Affidavit. It is evident that HI still considered itself in an adversarial position with AMI when the 10-K Report was filed with the SEC on March 28, 1974.

▮ NMIC asserts that the central issue in the First Cause of Action in the Amended Complaint is "whether Holiday Inns' conduct in agreeing to grant AMI a franchise while attempting to consummate a merger with that company, was injurious to plaintiffs." *See* NMIC's Brief in opposition to HI's motion for summary judgment at 15. HI has moved for summary judgment on this issue. Rule 56 of the Federal Rules of Civil Procedure allows a trial court to grant summary judgment if it determines from an examination of the allegations in the pleadings and any other evidential source available that no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law. Inferences to be drawn from the underlying facts contained in the

evidential sources must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

HI contends that its actions in granting the franchise to AMI were entirely consistent with the directives of Judge Garth in the September 5, 1973 Opinion and the Orders of September 11, 1973 and January 30, 1974. NMIC maintains that Judge Garth did not direct HI to grant the franchise to AMI but, in fact, only ordered HI to weigh any future AMI franchise application with regard to proper and appropriate business considerations. NMIC asserts that HI was never judicially mandated to grant the franchise to AMI, but only agreed to do so in the January 30th Order by consenting to it. Thus, NMIC argues that HI breached the duty of good faith and fair dealing which it owed to NMIC as its franchisee when it agreed to consent to an order granting AMI a franchise so close to NMIC's location, without examining any lawful, proper and appropriate business considerations in advance of its decision.

The Interim Order of September 11th decrees that HI is required to consider and act upon any franchise application by AMI for the Elizabeth property based solely upon proper and appropriate business considerations "consistent with the September 5, 1973 opinion of the Court." In his opinion, Judge Garth found that the Newark Airport area could support a second Holiday Inn specifically noting that "[d]efendant's [HI's] testimony that it denied AMI's application because no data showed the Newark Airport market sufficient to support two Holiday Inns is not credible." *American Motor Inns, Inc. v. Holiday Inns, Inc., supra*, 365 F.Supp. at 1087 (Finding #75). Judge Garth also found that Arthur Fleck, a principal of NMIC, had notified HI of his interest in acquiring the Elizabeth property in order to erect a Holiday Inn in lieu of a proposed addition to the existing inn, *id.* at 1086 (Finding #65), an act which this court can only construe as an admission by Fleck that the market could support two inns located where NMIC's inn was, and AMI's proposed inn was to be. Additionally, Judge Garth found that AMI's application for a franchise at the Elizabeth location was denied by HI solely because of the objections to the application by NMIC (through the Flecks, Arthur and Edwin). *Id.* (Findings # #67, 68, 69 and 70). The Flecks' objections to AMI's application were found by Judge Garth to be the reason for HI's rejection in that the objections constituted a veto. *Id.* (Finding #76). Furthermore, Judge Garth found that Fleck met with representatives of AMI after the rejection of the application by HI, in order to try to reach some agreement over the Elizabeth property. Judge Garth stated: "[I]t is clear that HI was prepared to accept any solution which satisfied Fleck, and thereafter to grant a franchise for a new Holiday Inn." *Id.* at 1087 (Finding #74).

There can be no dispute after a careful reading of Judge Garth's findings, that both NMIC and AMI felt that the Newark Airport market could sustain a second inn; both attempted to acquire the Elizabeth property to construct such an inn at that location. It is crystal clear that HI would have granted AMI's franchise request but for the veto of NMIC, *see id.* (Findings # #74, 75 and 76), and, thus, HI also felt that the area could support another inn. In light of Judge Garth's findings, HI's examination of AMI's renewed franchise application based solely upon proper and appropriate business considerations need not have contemplated whether or not the Newark Airport area could sustain a second inn; the parties here all agreed that it could.

The September 26, 1973 memorandum of HI's General Counsel Charles Collins to Donelson Lake, *supra*, Exhibit C to La Rossa Affidavit, sets forth certain factors for consideration by the Franchise Sales Department with regard to AMI's renewed application for a franchise at the Elizabeth property. In deposition testimony Collins explained the memorandum as follows:

Q. Can you tell us what the memorandum said?

A. I just listed—I don't know—approximately twelve different points or factors which occurred to me at the time, which I thought were some of the proper business factors that should be considered in evaluating the application.

\* . \* \* \* \* \*

Q. Did you prepare this memorandum, Mr. Collins, because of Judge Garth's wordings, and I refer to the following words ["] based solely on proper and appropriate business considerations? ["]

A. I'm sure that was fresh in my mind and I was just suggesting some of the factors to be considered, but might have been others.

Q. Did you believe that based upon that wording, solely on proper and appropriate business considerations, that Holiday Inn had a duty to make such a study or investigation of the factors that you referred to in your memorandum?

A. Yes, I so indicated that those matters should be considered. It is not that we did not, and when I say Holiday Inns, we did not consider it our responsibility to get out and figure out the information in support of an application. That's the responsibility of the franchise holder to accompany or follow his application with sufficient detailed information to justify the application and show that it was satisfactory.

\* \* \* \* \* \*

Q. Was the only reason for your memorandum the litigation?

A. I can't agree that it was the only or the sole consideration, but it was certainly fresh on my mind. I mean Judge Garth's order was fresh on my mind and I wanted to be sure that the franchise people acted properly and in accordance with Judge Garth's order.

Q. Do you believe that that memorandum applied, and I'm talking about Judge Garth's order?

A. I did or I never would have written it.

See Excerpts of deposition of Charles Collins appended as Exhibit D to La Rossa Affidavit. From reading the September 26, 1973 memorandum and Collins' deposition testimony, it is clear to me that the factors set forth in the memorandum were the criteria which HI felt would conform to the directives of Judge Garth's September 5, 1973 Opinion and September 11, 1973 Interim Order with respect to "proper and appropriate business considerations."

It is also clear to me that NMIC agrees that the factors set forth by Collins in the memorandum to Lake are "proper and appropriate business considerations" consistent with Judge Garth's Opinion and Interim Order. In the Reply Affidavit of NMIC's counsel James La Rossa submitted in opposition to the instant motion, plaintiff urges that "the Collins memorandum required Holiday Inns' Franchise Sales Department to consider AMI's September 18th franchise application with respect to at least *thirteen proper, lawful and appropriate business considerations* enumerated therein." (Emphasis in the original.) *See* Reply Affidavit of James La Rossa at ¶ 8. Thus, there is no dispute between the parties as to what factors would constitute "proper and appropriate business considerations" consistent with the September 5, 1973 Opinion. NMIC contends, however, that HI never considered those factors prior to the grant of the AMI franchise and, thus, caused the injuries complained of in the First Cause of Action in the Amended Complaint.

Whether HI's Franchise Department considered the factors set forth in the Collins memorandum to Lake, or weighed any other "proper and appropriate business considerations," cannot be made the basis for NMIC's First Cause of Action. The reason for this is simply that the findings of Judge Garth implicitly considered all "proper and appropriate business considerations" and concluded that despite market conditions at

the Newark Airport locale favorable for motel expansion, AMI's application for a franchise in the identical area sought by Fleck was denied because of Fleck's veto. *American Motor Inns, Inc. v. Holiday Inns, Inc., supra,* 365 F.Supp. at 1091. Accordingly, if HI had proceeded with an independent, in-depth investigation of the factors set forth in the Collins memorandum, which all parties agree are the "proper and appropriate business considerations," it would necessarily have concluded that it must grant the franchise to AMI.

Of the thirteen factors to consider, only the first four are relevant since the remainder are subsumed within the four. The first factor which Collins thought should be considered was "[t]he financial stability of the applicant." Judge Garth found that

> AMI is defendant's [HI's] largest franchise, owning or operating 48 Holiday Inns. It has franchises from defendant to build another eight, and has commitments from defendant for five additional franchises . . .. AMI's revenue from operation of hotels and motels totaled approximately $44-million during its fiscal year 1972.

*Id.* at 1077 (Finding #2). As its largest franchise holder, AMI must certainly have been viewed by HI as financially stable. More significant, perhaps, is the undisputed fact that HI was attempting to acquire AMI during the pendency of the lawsuit between them. The minutes of HI's Board of Directors meeting for November 3, 1973 refers to the proposed merger and recounts that each board member was provided with copies of AMI's financial statements and that the management of HI was recommending acquisition. *See* Excerpts from HI's Board of Directors meeting appended as Exhibit I to La Rossa Affidavit. The minutes of the December 14, 1973 Board of Directors meeting contain a recitation of the Board's resolution unanimously favoring the acquisition of AMI. *See* Excerpts from HI's Board of Directors meeting appended as Exhibit K to La Rossa Affidavit. It is obvious that AMI met any financial stability requirement to be considered as a "proper and appropriate business consideration."

The second enumerated factor in the Collins memorandum was "[t]he previous relevant business experience of the applicant." From Judge Garth's findings it is abundantly clear that, as HI's largest franchise holder with inns in Tennessee, North Carolina, Virginia, Maryland, Pennsylvania, Connecticut, Maine, Massachusetts and Puerto Rico, AMI possessed more than adequate relevant experience in the hotel/motel business. *See American Motor Inns, Inc. v. Holiday Inns, Inc., supra,* 365 F.Supp. at 1077 (Finding #2). It is logical to conclude that AMI was the *most experienced* applicant that HI could expect to consider, particularly with respect to knowledge of the prior working relationship of HI, as franchisor, to its franchisees.

The third and fourth factors which Collins thought should be considered were "[t]he exposure and accessibility of the site," and "[w]hether or not there is sufficient potential to support the proposed facility requested by the applicant." It is difficult to conceive of a legitimate argument to be made that these two factors were not completely considered by Judge Garth in the September 5, 1973 Opinion. Among his findings, Judge Garth noted that when the City of Elizabeth invited bids for the property which later became the focal point of the antitrust suit, the principals of NMIC responded. *Id.* at 1085 (Finding #59). NMIC had notified HI as early as January 1970 that it was interested in acquiring the Elizabeth property in order to erect a Holiday Inn. *Id.* at 1086 (Finding #65). It is manifest that NMIC had made the determination that the site of the Elizabeth property was one where exposure and accessibility was of the quality to warrant a bid and proposal of a franchise to HI. Moreover, HI must have concluded that the site was sufficiently accessible because Judge Garth found that AMI's original application would have been accepted but for NMIC's objection. *Id.* at 1091.

As to whether there was sufficient potential for the site to support the proposed

facility, it is clear that all parties, HI, AMI and NMIC had independently determined that the Newark Airport market could support a second inn. Judge Garth concluded the same. *Id.*

Accordingly, it is immaterial whether or not HI acted upon the factors suggested by Collins in his memorandum to Lake; the inescapable conclusion is that HI would have had to grant the franchise to AMI if the Collins factors were considered. Thus, the result is the same whether the franchise was granted because HI considered AMI's renewed application "solely upon proper and appropriate business considerations," or because HI acted in accordance with what it argues is a judicial mandate in the January 30th Order to grant the franchise at the Elizabeth property to AMI. Therefore, NMIC has suffered no injury attributable to the actions or inaction of HI subsequent to the September 5, 1973 Opinion of Judge Garth. From whatever perspective examined, HI was compelled to grant the franchise to AMI as a matter of law.

NMIC contends that HI's consenting to the January 30th Order was an action taken in derogation of HI's duty of good faith and fair dealing which was owed to its franchisee, NMIC. *See* NMIC's Brief in opposition to the instant motion at 2–3; Amended Complaint at ¶ 34. The First Cause of Action of the Amended Complaint makes reference to HI's alleged "obligation to refrain from the performance of any acts harmful to the economical viability and well-being of any licensee and franchised Holiday Inn motel without a proper and appropriate business consideration therefore [sic]." Amended Complaint at ¶ 14. NMIC also alleges that HI owed it the obligation

> not to issue any franchise for Holiday Inns in the business vicinity and marketing area of existing franchised Holiday Inns, except upon proper and appropriate business considerations and an inherent part of said defendant's obligations not to issue any franchises in a business vicinity and marketing area of existing fran-

chised Holiday Inns, was the well-being and economic viability of the particular licenses [sic] theretofore operating Holiday Inn franchises in that business vicinity and marketing area.

Amended Complaint at ¶ 15. The Amended Complaint further sets forth that the standard of proper and appropriate business considerations alleged in Paragraph 15, *supra*, "required a marketing survey of the availability and amount of custom and patronage for Holiday Inns in the marketing area and business vicinity of theretofore operating Holiday Inns." Amended Complaint at ¶ 16. NMIC alleges that by granting the franchise to AMI, HI "violated the obligations and duties owed by defendant Holiday Inns, Inc., as franchisor, to plaintiff Newark Motor Inn Corp. as franchisee." Amended Complaint at ¶ 39.

The License Agreement which granted NMIC its franchise in December 1967 was executed at HI's headquarters in Memphis, Tennessee. The eleventh covenant of the Agreement stipulates that the Agreement "shall be construed according to the laws of that State."

 It is hornbook law that in every contract there exists an implied covenant of good faith and fair dealing. *See* 5 *Williston on Contracts*, § 670 (3d ed. 1961); *Schultze v. Chevron Oil Co.*, 579 F.2d 776, 779 (3d Cir. 1978). Each party to a contract is under an implied obligation to restrain from doing any act that would delay or prevent the performance of the contract, *United States, Etc. v. Guy H. James Const. Co.*, 390 F.Supp. 1193, 1206 (M.D.Tenn.1972) (applying Tennessee Law), aff'd mem., 489 F.2d 756 (6th Cir. 1974), and neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Schultze, supra*, 579 F.2d at 779.

In its brief, NMIC attempts to raise the duty of good faith and fair dealing which HI owed its franchisees to the level of a fiduciary duty.* Although the theory is

---

* The chief exponent of the theory that the relationship of a franchisor to its franchisee is fiduciary in nature, is a Boston attorney named Harold Brown. *See, e.g.,* Brown & Cohen,

appealing in certain factual situations, the circumstances of the relationship between HI and NMIC at the time of the lawsuit before Judge Garth are such as to make the theory inapplicable. The theory is built upon the concept that the franchise relationship is almost always one involving nationwide size, purchasing power and technical know-how on one side, and local investment and entrepreneurship on the other. One commentator noted that

> [c]ritics [of the franchise relationship] have charged that through their dominant economic position franchisors have employed the franchise agreement to gain maximum control over the management of the dealers' business without corresponding "legal" responsibility. While the prospective franchisee is free to accept or reject the agreement, the argument runs, uniformity of essential terms throughout the franchise field makes the resulting choice one of adhering to the terms unilaterally set down by the franchisor or giving up the venture.

Note, Franchise Terminations, 74 Colum.L. Rev. 1487, 1487–88 (1974) (Citations omitted). There are no federal cases cited by NMIC, nor has this court's research uncovered any, that recognize the concept of a fiduciary relationship in the franchise area. *See Weight Watchers of Quebec Ltd. v. Weight Watchers International, Inc.*, 398 F.Supp. 1047, 1053–54 (E.D.N.Y.1975); *In re 7–Eleven Franchise Antitrust Litigation*, [1975] Trade Cases (CCH) ¶ 75,429 at 98,428 (N.D.Cal.1974); *Eaton, Yale & Towne, Inc. v. Sherman Industrial Equip. Co.*, 316 F.Supp. 435, 445 (E.D.Mo.1970). (NMIC's reliance on *Weight Watchers, supra,* is misplaced. There the court would not even impose a reasonableness standard opting, instead, for "good faith" as the proper test.)

■ Cases that have alluded to this "Goliath/David" inequality in finding quasi-fiduciary relationships between the parties have done so only in cases involving termination of the franchise. *See, e.g., Ashland Oil v. Donahue,* 223 S.E.2d 433 (W.Va.1976); *Shell Oil Co. v. Marinello,* 63 N.J. 402, 307 A.2d 598 (1973); *Division of the Triple T. Service, Inc. v. Mobil Oil Corp.,* 60 Misc.2d 720, 304 N.Y.S.2d 191 (Sup.Ct.1969), *aff'd mem.,* 34 A.D.2d 618, 311 N.Y.S.2d 961 (1971). Such was not the situation at the time of the suit before Judge Garth; the opposite was, in fact, at hand. The real nub of the present action is that NMIC sought to *expand* its motel business by acquiring a second franchise at the Elizabeth locale. When it was outbid for the property by AMI, NMIC vetoed AMI's application for the Elizabeth franchise. Judge Garth's finding of an antitrust violation, and the relief which subsequently flowed therefrom, in no way caused a termination of NMIC's existing franchise, nor did it prevent an expansion of NMIC's motel business. (NMIC could not expect to gain the second franchise at the Airport after losing the bid on the Elizabeth 'property.) The present action is really grounded in the fact that NMIC was frustrated in its expansion attempt. The public policy arguments inherent in the application of a fiduciary duty to a franchisor in its relationship with its franchisees are not applicable where the franchisee is seeking to expand and is prevented from doing so by virtue of the fact that it was unable to acquire the property necessary for the grant of a new franchise.

NMIC's allegations in Paragraphs 14 and 15 of the Amended Complaint, *supra,* of HI's duty not to act to the detriment of any existing franchisee nor to grant another franchise within the business vicinity and marketing area of an existing franchisee except upon proper and appropriate business considerations, are encompassed within the duty of good faith and fair dealing.

Franchise Equities, 63 Mass.L.Rev. 109 (1978); Brown & Cohen, Franchise Misuse, 48 Notre Dame Law. 1145 (1973); Brown, Franchising: Fraud, Concealment and Full Disclosure, 33 Ohio St.L.J. 517 (1972); Brown, Franchising—A Fiduciary Relationship, 49 Texas L.Rev. 650 (1971); Brown, *Franchising: Trap for the Trusting* (1969). Other commentators as well have examined this area, see E. R. Jordan, Unconscionability at the Gas Station, 62 Minn. L.Rev. 813 (1978); Note, Franchise Terminations and Refusals to Renew, 60 Iowa L.Rev. 122 (1974); C. Hewitt, Good Faith or Unconscionability—Franchisee Remedies for Termination, 29 Bus.Law. 227 (1973).

The allegation in Paragraph 16, of the necessity for a market survey to determine whether the area could support another motel, is specious in light of the clear finding of Judge Garth, and the obvious admission by NMIC, that the area could sustain another franchise. NMIC did not hold a franchise with an exclusive territory that extended beyond the seven acre tract it occupied on Route 1 near the Newark Airport. *See* License Agreement, first covenant; the Court of Appeals noted that NMIC did not possess an exclusive franchise. *American Motor Inns, Inc. v. Holiday Inns, Inc., supra,* 521 F.2d at 1244 n. 38. It is clear to me that the grant of the franchise to AMI was implicitly mandated by the findings of Judge Garth in the September 5th Opinion, if not expressly decreed by the September 11th and January 30th Orders. The continued combative positions of AMI and HI during this period belies NMIC's alleged inference that HI was acting with other than good faith when the franchise was granted to AMI. The motives of HI, whether or not honorable, could not prevent the ultimate disposition of AMI's franchise application.

In its brief in opposition to the instant motion, NMIC sets forth the material facts as to which it asserts there is a genuine dispute. NMIC's Brief at 4–6. After the foregoing analysis, it is irrelevant whether NMIC has sought in this suit to collaterally attack the prior judgment of Judge Garth in the earlier suit between HI and AMI, or whether the doctrines of *res judicata,* collateral estoppel and *stare decisis* are applicable here. Nor is it relevant whether HI had agreed to consent to the January 30th Order or whether HI acted to grant the franchise to AMI because HI thought that it was judicially mandated to do so. Furthermore, it is of no moment here whether NMIC or its principals were ever named as parties in the earlier action before Judge Garth, or whether IAHI (International Association of Holiday Inns) ever represented the interests of NMIC in that earlier suit. Nor is it significant whether the September 5th Opinion ever stated that there could be no valid and proper business consideration upon which

HI could base a denial of AMI's franchise application. Whether HI breached any duty of good faith and fair dealing it owed to NMIC is inconsequential. The fact that HI and AMI were involved in merger negotiations is undisputed and is relevant mainly to indicate that HI had thoroughly investigated AMI's financial stability and experience in the industry—two factors that NMIC agrees are proper and appropriate business considerations.

After examining the pleadings and the exhaustive exhibits, as well as the September 5, 1973 Opinion of Judge Garth and the opinion of the Court of Appeals, I agree with Judge Weinstein that a summary judgment motion was in order. Furthermore, I agree with Justice Hirsch of the New York Supreme Court that, at least as to the First Cause of Action in the Amended Complaint, NMIC has failed to demonstrate a valid claim against HI. Accordingly, HI's motion for summary judgment as to the First Cause of Action of the Amended Complaint will be granted.