AMOCO OIL COMPANY, Plaintiff,

v.

CARDINAL OIL COMPANY, INC., and Robert J. Mally, Defendants.

Civ. A. No. 81-C-264.

United States District Court, E. D. Wisconsin.

April 5, 1982.

---

**2.** *Id.* at 684.

W. Stuart Parsons, Quarles & Brady, Milwaukee, Wis., for plaintiff.

George M. St. Peter, St. Peter Law Offices, S.C., Fond du Lac, Wis., for defendants.

## DECISION AND ORDER

TERENCE T. EVANS, District Judge.

This is an action for the recovery of amounts due for products supplied under a jobber contract. The defendants have counterclaimed for breach of contract, fraud, misrepresentation, and injury to business. Before me is the plaintiff's motion for summary judgment on its claim and on all of the defendants' counterclaims. The defendants have moved for leave to amend their answer to state a counterclaim for breach of fiduciary duty.

In 1976, the defendant corporation and its principal stockholder, defendant Robert J. Mally, became a "jobber" of the plaintiff's petroleum product and related merchandise. Under the contract the plaintiff would sell petroleum products, such as diesel oil, heating oil, gasoline, motor oils, and automotive and industrial oils and greases, as well as other related merchandise, including tires, batteries and accessories (TBA), to the defendants who would then sell them to oth-

ers. Subsequent to becoming an Amoco jobber, the defendant Mally, in 1977, purchased another jobbership located in Van-Dyne, Wisconsin, for $70,000 plus 1.5¢ per gallon on accounts developed by the previous owner.

In 1978, 1979 and 1980, the defendants encountered difficulties paying Amoco for products delivered to them. In early November of 1979, Mally met with representatives of Amoco and officials from the First Wisconsin Bank of Fond du Lac to discuss the possibility of obtaining a loan to discharge his Amoco indebtedness, an amount then in excess of $86,000. A plan was proposed whereby the bank would lend $42,500 and Amoco, $42,500, for a total of $85,000. As security for its $42,500 loan, Amoco requested extensive security interests in the business property and inventories of the defendant corporation, including a second mortgage on real estate owned by Cardinal.

Also in November of 1979, but after being informed that First Wisconsin Bank would not lend him $42,500, Mally applied for a $100,000 Small Business Administration loan. The SBA approved a loan of $75,000 for Mally.

In late January of 1980, Mally signed the loan papers in connection with the loan from Amoco, and the second mortgage was filed at the Fond du Lac County Courthouse. Amoco did not file any of the other security interests executed by Mally. In March of 1980, Mally was informed by the SBA that in order to receive the $75,000 loan the SBA required a second mortgage on real estate owned by Cardinal. Mally contacted an Amoco representative, explaining that the SBA needed a second mortgage on Cardinal property and requesting Amoco to release the second mortgage it had filed on the same property. Amoco released the second mortgage on April 3, 1980 and Mally received the $75,000 SBA loan, of which $50,000 was paid to Amoco against the outstanding debt. In that same month Amoco demanded from the defendants the remainder of the outstanding debt, and Mally paid Amoco the remaining $25,000 in loan proceeds as well

as approximately $16,000 of other capital. Amoco did not make the $42,500 loan.

By October 1, 1980, the defendants were again $27,000 past due on their account with Amoco. By January 1, 1981, the amount increased to $53,000. By letter dated January 16, 1981, an Amoco representative informed Mally of the outstanding amount then due and demanding that Mally submit a plan to Amoco by January 30, 1981 which would provide for the repayment of the outstanding balance by April 1, 1981. By letter dated May 13, 1981, Amoco terminated its jobbership agreement with the defendants effective June 13, 1981.

I

Amoco's complaint seeks to recover the amount due on the defendants' account as of the date this suit was filed, together with interest. Its reply brief in support of this motion indicates that the proper amount is $71,449.41, including finance charges through December 31, 1981. In their answer to the complaint the defendants admit their indebtedness in the amount of $67,477.41 plus a 1% per month finance charge from June 9, 1980 to March 5, 1981. The defendants' acquiescence in the amount due gives this claim the characteristics of an action for an account stated. *See: Onalaska Electrical Heating, Inc. v. Schaller*, 94 Wis.2d 493, 288 N.W.2d 829 (1980).

Rule 56(c), Federal Rules of Civil Procedure, provides that

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In support of its motion for summary judgment, Amoco has submitted the affidavits of a number of its personnel together with a number of exhibits, including computerized account statements verifying the amount at issue. The defendants, in response to the plaintiff's motion, submitted

no affidavits and, in fact, offered no arguments in opposition to Amoco's motion for judgment. Because the amount of the claim as well as the fact that it is due and owing is undisputed, and further because the defendants offer no defenses, legal or factual, to the claim, it is but a simple matter of basic contract principles to come to the conclusion that the plaintiff is entitled to judgment. It will be so ordered.

## BREACH OF CONTRACT COUNTERCLAIM

■ This counterclaim deals with the $42,500 loan which the plaintiff and defendants had negotiated but which the plaintiff never actually made. The defendants claim that a loan agreement had been entered, and that Amoco's refusal to make the loan was a breach of that agreement. The plaintiff argues that its failure to make the loan was not a breach of contract because its duty to perform—to make the loan—was discharged when Mally requested Amoco to release its second mortgage on Cardinal's property so that the defendants could obtain their SBA loan. Viewing the second mortgage on Cardinal's real estate as a condition precedent to its contractual obligation to loan the money, Amoco argues that the failure of that condition relieved it of the obligation of making the loan.

In his deposition Mally testified that he requested Amoco to release the second mortgage in a telephone call which he placed from the SBA office in Madison, Wisconsin, to an Amoco representative. Mally stated that the representative, Mr. Ron Berlind, agreed to release Amoco's second mortgage, but did not indicate at that time that without the second mortgage Amoco would not follow through on the $42,500 loan. Mally testified that he did not become aware that Amoco had no intention of making the loan until he was approached by an Amoco representative for the remainder of the amount then outstanding after he had applied $50,000 of his SBA loan to the debt. In contrast to this version of the facts, Ron Berlind, in his affidavit, states that during the phone call he received from Mally requesting the release of the second mortgage he also informed Mally that the money would not be loaned without the requested security.

Amoco's argument that the pledge of security in the form of a second mortgage on Cardinal real estate was a condition precedent to its duty to make the loan is too facile. Genuine issues of material fact exist, in my opinion, concerning whether the second mortgage was indeed a condition precedent, and more important, whether Berlind's action in releasing the second mortgage was either a waiver of the condition precedent or simply a subsequent modification of the loan agreement in light of the SBA's security demands. Accordingly, summary judgment on this claim would be inappropriate.

## FRAUD AND MISREPRESENTATION COUNTERCLAIMS

These claims also relate to the $42,500 loan by Amoco which never materialized. In their fraud claim the defendants allege that Amoco represented to the defendants that it would make the loan, that the representation was untrue, and that the defendants relied upon the representation to their detriment. The only significant difference between the claims is that in the fraud claim the defendants allege that the false representation was known to be false by Amoco representatives, and in the misrepresentation claim Amoco either knew or should have known that it was false.

The defendants argue that genuine issues of material fact exist with respect to the intent element of these claims, that is, whether Amoco intended from the outset not to make the loan and whether the Amoco representatives with whom Mally dealt knew or should have known. Specifically, they argue that the plaintiff's failure to perfect the security interests executed by Mally in connection with the loan indicated Amoco's intention from the outset not to make the loan. In addition, Mally testified that an Amoco representative told him that the reason why the loan was not made was that the plaintiff did not want the defend-

ants' account brought current so they could qualify for a discount which Amoco gave on current accounts.

■ As a general matter, where intent is an issue, summary judgment is not appropriate. *Central National Life Insurance Co. v. Fidelity & Deposit Insurance Co. of Maryland*, 626 F.2d 537 (7th Cir. 1980); *Peoples Outfitting Co., Inc. v. General Electric Credit Corp., Inc.*, 549 F.2d 42 (7th Cir. 1977). When coupled with the standard rule that all facts and inferences in a summary judgment proceeding should be viewed in a light most favorable to the party opposing the motion, it is apparent that summary judgment with respect to these claims would not be appropriate. The facts here do support an inference, albeit not a strong one, that Amoco never intended to go through with the loan. The defendants are entitled to have this matter tried.

## BREACH OF JOBBER CONTRACT

In this counterclaim the defendants allege that Amoco promised Cardinal it would enter into a jobber contract granting it the privilege of selling tires, batteries and accessories (TBA). The defendants allege that Amoco breached its jobber contract by refusing to grant Cardinal a TBA position. Amoco seeks summary judgment on the ground that by his own testimony Mally admitted that Amoco did grant the defendants a TBA contract which gave the defendants the right to sell TBA to anyone, and further, that under the TBA provision Amoco never refused to sell to the defendants any TBA the defendants ordered. This is substantiated by Mally's deposition testimony.

■ Evidently the defendants acquiesce in the plaintiff's position with respect to this counterclaim, since they made no effort in their responsive brief to oppose summary judgment on this claim. No argument was directed to it, and no affidavits or other evidence was presented or identified which would raise any issues of fact or present any legal basis for the claim. When confronted with a motion for summa-

ry judgment, the party in opposition has a duty to come forward either with affidavits or to point to portions of the record containing significant probative evidence to support the complaint. *Freeman v. Decio*, 584 F.2d 186 (7th Cir. 1978); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677 (7th Cir. 1977), *cert. den.*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1977). Here the defendants have failed in that respect. The undisputed evidence is that the Amoco jobbership contract did grant the defendants TBA privileges, and prior to the termination of the jobbership supplied whatever TBA the defendants ordered. In view of the complete absence of any factual basis for this counterclaim, and the defendants' failure to identify any, the plaintiff's motion for summary judgment on this counterclaim will be granted.

## INJURY TO BUSINESS COUNTERCLAIM

In this claim the defendants allege that in their course of dealing with Amoco "Amoco and its agents engaged in a concerted course of action with the intent and design to force Cardinal Oil out of business" by promising financial assistance and not supplying it, by breaching a promise to make Cardinal a TBA jobber, by breaching its promise to loan money to Cardinal, and by refusing to supply its product to Cardinal. The defendants claim that this course of conduct on the part of Amoco violated §§ 133.03(1) and 134.01, Wis.Stats.

The substance of the sections is as follows:

"(1) Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal. Every person who makes any contract or engages in any combination or conspiracy in restraint of trade or commerce may be fined not more than $100,-000 if a corporation, or, if any other person, $50,000, or be imprisoned for not more than 5 years, or both."

"*134.01 Injury to business; restraint of will.* Any 2 or more persons who shall

combine, associate, agree, mutually undertake or concert together for the purpose of wilfully or maliciously injuring another in his reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500."

■ Section 133.03(1) is substantially similar to § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and the Wisconsin Supreme Court has indicated that federal law controls the interpretation of this state statute. *Grams v. Boss*, 97 Wis.2d 332, 346, 294 N.W.2d 473 (1980); *John Mohr & Sons, Inc. v. Jahnke*, 55 Wis.2d 402, 410, 198 N.W.2d 363 (1972). Concerted action is fundamental to a suit under § 1. *Lamb's Patio Theatre, Inc. v. Universal Film Exchanges, Inc.*, 582 F.2d 1068, 1070 (7th Cir. 1978). Here the only concerted action alleged is among Amoco and its agents, whom the record indicates are field representatives and other Amoco employees. It has long been recognized that a corporation cannot conspire with its officers, directors or employees for purposes of a § 1 violation. *Nelson Radio & Supply Co. v. Motorola*, 200 F.2d 911, 914 (5th Cir. 1952), *cert. den.*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953).

■ The defendants' effort to base a claim upon a violation of § 134.01, Wis. Stats., is similarly defective. Once again, that section expressly contemplates concerted action, while the defendants have alleged, and the record reveals, nothing more than unilateral action on the part of Amoco. See *McCluney v. Joseph Schlitz Brewing Co.*, 489 F.Supp. 24, 26 (E.D.Wis.1980). Accordingly, the plaintiff is entitled to summary judgment on the defendants' Fifth Counterclaim.

## PROPOSED SIXTH COUNTERCLAIM

The defendants have moved for leave to amend their pleadings to state a sixth counterclaim based upon a breach of fiduciary duty. The defendants allege that the plaintiff entered into a franchise relationship with them which created in the plaintiff "a fiduciary duty of good faith and fair dealing," which the plaintiff allegedly breached by promising to loan money to the defendants but then refusing to do so, and by intentionally undercutting the defendants on prices charged to dealers for tires, batteries and accessories.

In support of their motion, the defendants rely upon *Arnott v. American Oil Co.*, 609 F.2d 873 (8th Cir. 1979), *cert. den.*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980), which held that a franchise relationship imposed upon the parties a fiduciary obligation to act with good faith in their dealings with one another. That holding, the court explained, was based upon a state statute which clarified then-existing common law. Other courts, however, have not elevated the franchise relationship to a fiduciary one. See, e.g., *Newark Motor Inn Corp. v. Holiday Inns, Inc.*, 472 F.Supp. 1143 (D.N.J.1979); *Picture Lake Campground, Inc. v. Holiday Inns*, 497 F.Supp. 858 (E.D. Va.1980); *Eaton, Yale & Towne, Inc. v. Sherman Industrial Equipment Co.*, 316 F.Supp. 435 (E.D.Mo.1970). Recently, Chief Judge John W. Reynolds of this district reached a similar conclusion, rejecting *Arnott*. *Murphy v. White Hen Pantry*, Case No. 79-C-460 (E.D.Wis.1981).

■ Assuming the jobbership which existed in this case was in fact a franchise, a point which the plaintiff is not willing to concede, I, too, reject the contention that such a relationship, in itself, gives rise to fiduciary obligations. It is the law of this state that every contract imposes upon the parties thereto duties of good faith and fair dealing. *Estate of Chayka*, 47 Wis.2d 102, 107–8, 176 N.W.2d 561 (1970). That this duty also inheres as a matter of statutory law in a franchisor/franchisee relationship does not, in my view, make that relationship a fiduciary one. As Judge Reynolds stated in *Murphy*, "as to the ongoing relationship between the parties [franchisor and franchisee], it is primarily a standard business relationship and is governed by the

language of their contract." Because the defendants proposed Sixth Counterclaim fails to state a claim upon which relief can be granted, the motion for leave to amend will be denied.

For the foregoing reasons,

IT IS ORDERED:

1. That the plaintiff be and hereby is awarded judgment in the amount of $67,-477.41, plus interest at the rate of 1% per month from June 9, 1980 to March 5, 1981.

2. That the plaintiff's motion for summary judgment on the defendants' counterclaims be denied with respect to the defendants' First, Second, and Third Counterclaims, and granted with respect to the Fourth and Fifth Counterclaims.

3. That the defendants' motion for leave to file an amended answer setting forth a Sixth Counterclaim be denied.

4. That a telephone status conference will be held in the matter on May 27, 1982, at 9:45 a. m.