[Civ. No. 65502. Second Dist., Div. Seven. July 6, 1983.]

KIP F. RICKEL et al., Plaintiffs and Appellants, v.
SCHWINN BICYCLE COMPANY et al., Defendants and Respondents.

COUNSEL

Newman, Chrisman & Faith, J. Randall Faith and Steven J. Nelson for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Rex S. Heinke, Susan Erburu Reardon, Keck, Mahin & Cate and Richard L. Reinish for Defendants and Respondents.

OPINION

**SCHAUER, P. J.**—Plaintiffs Kip and Judith Rickel (the Rickels) appeal from the summary judgment granted defendants Schwinn Bicycle Company, an Illinois corporation, and Schwinn Sales Company, a Delaware corporation (collectively Schwinn). The principal issues on appeal involve the existence of a fiduciary relationship between a manufacturer and dealer and pleading and proof requirements as to wrongfulness in respect to the tort of interference with a prospective economic advantage.

Plaintiffs, the Rickels, owned a bicycle shop in Glendora, California. In 1963 the Rickels entered into an agreement with Schwinn by which they became authorized Schwinn dealers. As such, they were entitled to sell Schwinn bicycles, but were also free to sell other brands of bicycles, as well as nonbicycle items. The dealership agreement between the Rickels and Schwinn provided that Rickels' distribution rights were personal and were "nonassignable and nontransferable."

In 1975 the Rickels listed the Glendora shop for sale with a broker, Leonard Ray. Three potential buyers appear to have expressed interest in the shop.

The first potential buyers were the Yamamotos, who applied to become Schwinn dealers. No testimony, declaration or affidavit by the Yamamotos appears in the record. Schwinn rejected their application, contending that they had insufficient capital and that they would not be able to operate the shop at a profit. In response to this rejection, the Rickels altered the terms of the sale, reducing the monthly rent from $1,200 to $1,000 and delaying portions of the down payment for 60 to 90 days. Schwinn thereupon rejected the Yamamotos' application once again.

In connection with the Yamamotos' application, the Rickels supplied Schwinn with various profit and loss statements and projections. The Yamamotos also provided Schwinn with their own financial statements. These

items do not appear in the record. Discovery during this litigation, however, revealed two measures of the profitability of the Rickels' shop. The Rickels' 1974 tax return showed a profit of $11,680, while the "Profit or Loss Statement," prepared for the Rickels' use in selling the shop, showed a profit of $34,998. Kip Rickel testified that the Yamamotos' expenses would exceed the expenses shown in these statements by $12,000 per year. He contended, however, that the Yamamotos would have been able profitably to run the business in spite of their increased expenses, assuming they hired no outside labor. Schwinn asserted that its calculations indicated that the Yamamotos would have had a "zero profit."

After the rejection of the Yamamotos, the Rickels claim to have entered into an agreement of sale with Charles Fisher. Fisher did apply for a Schwinn dealership but later withdrew the application. As with the Yamamotos, no statement under oath by Mr. Fisher appears in the record. Leonard Ray, however, gave evidence that Fisher told him that he withdrew his application because an agent of Schwinn told him that the Rickels' asking price for the shop was $35,000 too high.

The third potential buyer, Charles McCready, owned several non-Schwinn bicycle shops in the Glendora area. No statement by Mr. McCready appears in the record. Plaintiffs allege that McCready decided not to purchase the Rickels' shop on hearing from a Schwinn representative that Schwinn would not grant dealership rights to the owner of non-Schwinn stores in the area. McCready never applied to become a Schwinn dealer.

In the meantime, the Rickels moved to Reno, Nevada, and on May 23, 1975, became Schwinn dealers at a shop there. The Rickels experienced cash flow difficulties at the new shop and decided to sell it. At this time their past due accounts to Schwinn amounted to $55,000. The Rickels claim that Schwinn placed restrictions on the sale of the Reno shop, insisting that it be sold for no more than the cost of inventory. Schwinn denies any such restrictions were ever imposed.

The Rickels sued Schwinn, alleging that Schwinn breached its fiduciary duty to them in hampering the attempted sales of the Glendora and Reno shops. The Rickels also alleged that Schwinn interfered with the Rickels' prospective advantageous relations with the Yamamotos, Fisher and McCready.

The trial court granted summary judgment for Schwinn. The Rickels appeal, claiming (1) the court erred in finding no fiduciary relation existed between Schwinn and the Rickels, (2) Schwinn violated its duty of good faith and fair dealing to the Rickels and (3) the court erred in reasoning that

the Rickels were required to plead and show that Schwinn's acts were not justified, and in granting summary judgment as to the cause of action for interference with prospective advantage.

## I

### Standards for Summary Judgment

■ The summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [126 P.2d 880].) Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. (Code Civ. Proc., § 437c; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) The court may not pass upon the issue itself. (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436 [74 Cal.Rptr. 895, 450 P.2d 271].) When no triable issue of fact exists, and the parties' contentions turn upon an issue of law, summary judgment is proper. (*Burke Concrete Accessories, Inc.* v. *Superior Court* (1970) 8 Cal.App.3d 773 [87 Cal.Rptr. 619].)

■ "The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory." (*Lipson* v. *Superior Court, supra,* 31 Cal.3d at p. 374.) "The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion." (*Slobojan* v. *Western Travelers Life Ins. Co., supra,* 70 Cal.2d at p. 437.)

## II

### No Fiduciary Relationship Existed Between Plaintiffs and Defendants.

■ Plaintiffs' first cause of action alleges that a fiduciary relationship arose from the distribution agreement between plaintiffs and defendants. The Rickels assert that Schwinn, in its failure to approve the buyers of the Glendora shop and in its dealings with regard to the Reno store, violated this fiduciary duty to them. Schwinn denies the existence of any fiduciary relationship.

It is conceded by plaintiffs that there is no California authority applying fiduciary standards to the dealings between a manufacturer and his authorized dealers. Thus, plaintiffs are forced to rely on the line of authority stating the traditional definition of a fiduciary relationship. This definition

is set forth in *Bacon* v. *Soule* (1912) 19 Cal.App. 428, 434 [126 P. 384], for example, as follows: "A 'fiduciary relation' in law is ordinarily synonymous with a 'confidential relation.' It is also founded upon the trust or confidence reposed by one person in the integrity and fidelity of another, and likewise precludes the idea of profit or advantage resulting from the dealings of the parties and the person in whom the confidence is reposed."

Plaintiffs' complaint and their papers presented at the summary judgment hearing offer no evidence whatsoever that the requirements of this definition were met. The trial judge correctly noted that nonmutual profit was inherent in the relationship between plaintiffs and defendants. Plaintiffs sold bicycles made by Schwinn's competitors in the shops which are the subject of this suit and were free to recommend to customers that these bicycles be purchased instead of those made by Schwinn. Schwinn's pricing decisions, on the other hand, were made unilaterally and for the sole purpose of increasing Schwinn's profits. True, these decisions were undoubtedly made for the purpose of increasing Schwinn's overall sales and thus had the effect of benefiting Schwinn and its dealers mutually. Equally certain, however, is the fact that Schwinn was free to make pricing and distribution decisions for the purpose of increasing its own profits at the expense of its dealers. The papers submitted on the motion thus show that an element of nonmutual profit and advantage was essential to the relationship between the parties. This being the case, the relationship in question does not meet the traditional standard for the application of fiduciary principles.

Plaintiffs also attempt to analogize the manufacturer-distributor relationship present in this case to several traditional fiduciary relationships: the trustor-trustee, tenant-cotenant, and director-corporation relationships. This attempt fails. All these accepted fiduciary relationships preclude any element of nonmutual profit. The trustee may not profit at the expense of its trust (Civ. Code, § 2228), the director at the expense of his corporation (*Efron* v. *Kalmanovitz* (1964) 226 Cal.App.2d 546, 556-557 [38 Cal.Rptr. 148]) or the tenant at the expense of his cotenant (*Hendrickson* v. *California Talc Co.* (1942) 55 Cal.App.2d 467, 474 [130 P.2d 806]). Plaintiffs, faced with the element of nonmutual profit extant in the facts presented, analogize this profit to the fees charged by executors, trustees and directors. This argument, however, deprives the traditional test for fiduciary relations of any significance. If the nonmutual profit present in this case can be ignored by the analogy to director's and trustee's fees, we doubt there is any contractual relationship to which such an analogy will not apply. The nonmutual profits present in *any* contractual relationship can, with equal logic, be analogized to the payment of a trustee's fee, thus converting any contractual relationship into a fiduciary one. But California law is that parties to a contract, by that fact alone, have no fiduciary duties toward one another.

(*Gonsalves* v. *Hodgson* (1951) 38 Cal.2d 91, 97-98 [237 P.2d 656]; *Waverly Productions, Inc.* v. *RKO General, Inc.* (1963) 217 Cal.App.2d 721, 732 [32 Cal.Rptr. 73].) Plaintiffs have failed to allege facts which imply that anything more than a contractual relationship existed here; a fiduciary relationship does not exist.

One federal circuit court case does apply fiduciary principles to a franchise situation (*Arnott* v. *American Oil Company* (8th Cir. 1979) 609 F.2d 873, 880-884, cert. den. 446 U.S. 918 [64 L.Ed.2d 272, 100 S.Ct. 1852]; contra, *Amoco Oil Co.* v. *Cardinal Oil Co., Inc.* (E.D.Wis. 1982) 535 F.Supp. 661, 666-667; *Picture Lake Campground* v. *Holiday Inns, Inc.* (E.D.Va. 1980) 497 F.Supp. 858, 869; *Newark Motor Inn Corp.* v. *Holiday Inn, Inc.* (D.N.J. 1979) 472 F.Supp. 1143, 1151-1153; see also *Bain* v. *Champlin Petroleum* (8th Cir. 1982) 692 F.2d 43, 47-48, limiting *Arnott, supra*). The evidence here, however, demonstrates that the relationship between plaintiffs and defendants was merely a distributor/dealer relationship and *not* a franchisor/franchisee relationship. There is thus no basis whatsoever for implication of a fiduciary relation between plaintiffs and defendants in this suit. Summary judgment was therefore properly granted as to plaintiffs' first cause of action.

### III

Plaintiffs Did Not Raise the Theory of Breach of the Implied Covenant in Their Complaint or Papers Opposing Summary Judgment.

On appeal plaintiffs attempt to recharacterize their first cause of action as one based on "the duty of good faith implied in every contractual relationship." Plaintiffs did not propound this legal theory in their complaint. Nor was it set out in plaintiffs' papers opposing summary judgment. A single passing reference to the duty of good faith and fair dealing does occur in plaintiffs' points and authorities in opposition to summary judgment. Immediately following this reference, however, plaintiffs clearly imply that they are not relying on this duty of good faith required in every contract. They state: "Regardless of the terminology used to define Rickel and defendants' relationship, it is obvious that the relationship was far more than a mere contractual arrangement, rather, . . . a finding that a fiduciary relationship existed between Rickel and defendants is compelled." It is thus clear that the only legal theory presented to the defendants or to the trial court was one based on breach of fiduciary duty.

It is well settled that a party to a trial court proceeding is not permitted to change his position and offer a new theory of the case on appeal. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 281, pp. 4269-4270.

See also *Sevilla* v. *Stearns-Roger, Inc.* (1980) 101 Cal.App.3d 608, 611-612 [161 Cal.Rptr. 700].) An exception to this rule exists, however, if the new theory raises only questions of law and is based solely on facts already in the record. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 288, p. 4275; *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) The limits of this exception were suggested in *Ward* v. *Taggart, supra,* as follows: "[T]he opposing party should not be required to defend for the first time on appeal against a new theory that 'contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial.'" (*Id.,* at p. 742, quoting *Panopulous* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738].) Here, we find that the above test for presenting a new theory on appeal is not met because plaintiffs' first count did not bring the relevant factual situation sufficiently into controversy.

In the case at bar, the gravamen of plaintiffs' first count was unmistakably the breach of fiduciary duty. Plaintiffs' pleadings gave notice that the count was based on this theory and no other. Understandably, then, Schwinn's response to this count was simply to assert that no fiduciary duty existed. Had the theory of an implied covenant been put forward earlier, defendants would have had the opportunity to factually challenge the alleged breach of good faith. As it stands, Schwinn never had this opportunity. Plaintiffs' new legal theory therefore "contemplates a factual situation the consequences of which . . . were not put in issue" at the summary judgment proceeding. (*Ward* v. *Taggart, supra,* 51 Cal.2d at p. 742.) Such a theory may not be advanced for the first time on appeal.

Plaintiffs seek to avoid this result by citing *Wiler* v. *Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 621, 627 [157 Cal.Rptr. 248], which states: "'Thus, a plaintiff who has pleaded a cause of action on either of two theories will not be subject to defeat by summary judgment because the defendant has established by uncontradicted affidavit that *one* of the two theories (but not necessarily the other) cannot be established.'" This exception is not applicable here for the simple reason that the Rickels never pleaded or effectively raised the theory of breach of the implied covenant of good faith. Since this theory was not set forth below, it may not be considered here.

IV

The Summary Judgment as to Plaintiffs' Causes of Action for Interference With Prospective Advantage Was Proper.

1. *Plaintiffs were not required to plead and prove that defendants' conduct was not justified.*

In a memorandum opinion supporting its award of summary judgment, the trial court reasoned that the plaintiff in a suit for interference with prospective advantage must allege that the defendant's conduct was not justified or privileged. The Rickels attack this reasoning, contending that nonjustification is not an element of the tort but an affirmative defense which need not be pleaded by plaintiffs.

At first glance, the cases dealing with interference with contract or prospective advantage appear to contradict themselves and each other on this point. Some courts list lack of justification as an element of the tort. (*Richardson* v. *La Rancherita* (1979) 98 Cal.App.3d 73, 80 [159 Cal.Rptr. 285]; *Baldwin* v. *Marina City Properties, Inc.* (1975) 79 Cal.App.3d 393, 407 [145 Cal.Rptr. 406]; *Gold* v. *Los Angeles Democratic League* (1975) 49 Cal.App.3d 365, 375 [122 Cal.Rptr. 732]; *Abrams & Fox, Inc.* v. *Briney* (1974) 39 Cal.App.3d 604, 608 [114 Cal.Rptr. 328]; *Lowell* v. *Mother's Cake & Cookie Co.* (1975) 79 Cal.App.3d 13, 18 [144 Cal.Rptr. 664, 6 A.L.R.4th 184]. See also *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 826 [122 Cal.Rptr. 745, 537 P.2d 865].) Others do not. (*Buckaloo* v. *Johnson, supra,* 14 Cal.3d 815, 827; *A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc.* (1972) 27 Cal.App.3d 710, 714 [104 Cal.Rptr. 96].) Those cases which do list lack of justification as an element usually go on, confusingly, to state that justification is an affirmative defense, which cannot be considered in sustaining a demurrer. (See, e.g., *Richardson* v. *La Rancherita, supra,* 98 Cal.App.3d at p. 80; *Gold* v. *Los Angeles Democratic League, supra,* 49 Cal.App.3d at p. 376; *Lowell* v. *Mother's Cake & Cookie Co., supra,* 79 Cal.App.3d at pp. 18-19.) Careful reading of these cases, however, clarifies the source of this confusion.

In listing the elements of the tort which plaintiff must plead, most courts state the "nonjustification" element using the following language: "[T]he breach was caused by defendant's *wrongful or* unjustified conduct." (*Weiss* v. *Marcus* (1975) 51 Cal.App.3d 590, 601 [124 Cal.Rptr. 297], italics added.) (See also *Baldwin* v. *Marina City Properties, supra,* 79 Cal.App.3d at p. 407 (". . . the acts or conduct of the defendants were wrongful"); *Dryden* v. *Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 995 [135 Cal.Rptr. 720] (". . . caused by the defendant's unjustified or wrongful conduct" (Italics omitted.)); *Gold* v. *Los Angeles Democratic League, supra,* 49 Cal.App.3d 365, 375 (". . . caused by defendant's wrongful and unjustified conduct"); *Abrams & Fox, Inc.* v. *Briney, supra,* 39 Cal.App.3d 604, 608 (". . . as a proximate result of the defendant's wrongful or unjustified conduct").) It thus becomes clear that a plaintiff's only responsibility

is to plead that defendant's interference is somehow wrongful. He can plead this by alleging nonjustification, but he is under no obligation to do so, as long as he alleges some facts that take defendant's actions out of the realm of legitimate business transactions.

This distinction between wrongfulness and nonjustification was stated by the court in *A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc., supra,* 27 Cal.App.3d 710, 715, which held that it was not the plaintiff's responsibility to plead nonjustification:

"If we read such statements to mean that lack of justification is an element of the cause of action, then of course, a plaintiff would have to plead and prove that negative. Such a reading would ignore the established principle that when an *existing* contractual relationship is involved, justification for interfering with it is an affirmative defense. [Citations omitted.] To treat lack of justification as an element of the tort when it is a *prospective* advantage that is involved would create an additional and unwarranted difference between the two torts." The court then went on to state:

"On the other hand, it is necessary to avoid a situation where every bona fide competitor might find himself put to justifying the conduct of his business at the whim of a rival. . . . 'No case has been found in which intended but purely incidental interference resulting from the pursuit of the defendant's own ends by proper means has been held to be actionable.' . . .

"Thus, while no particular language should be required, the facts pleaded by a plaintiff must show an intent to do something which takes the defendant's acts beyond those of a mere competitor securing business for himself." (*A. F. Arnold, supra,* at p. 716, quoting Prosser, Torts (4th ed. 1971) pp. 952-953.) The decision in *Arnold,* then, requires that a plaintiff plead some type of wrongful conduct by defendant; at the same time it makes clear that plaintiff need not plead nonjustification.

This requirement was also recognized by the Ninth Circuit in *DeVoto* v. *Pacific Fid. Life Ins. Co.* (1980) 618 F.2d 1340. There the court reversed a jury verdict in favor of plaintiff's claim of interference with prospective advantage under California law. The court held that defendants had no motive to injure plaintiffs because defendants were not aware of the relation between plaintiffs and the breaching third party. The court went on to state: "It is the intentional attainment of an unjust advantage which underlies the requirement that the interference be improper, Restatement (Second) of Torts § 767 (1979), and motive or purpose is usually an accurate measure of the advantage the actor sought and of its just or unjust character. . . .

[¶] . . . Absent a motive or purpose to injure the plaintiffs, or to appropriate an economic advantage belonging to them, or some other aggravating circumstances, the acts of Bankers or Pacific were not tortious as to the plaintiffs. The plaintiffs failed to establish these essential elements." (*DeVoto* v. *Pacific Fid. Life Ins. Co., supra,* 618 F.2d at pp. 1348-1349.)

The drafting of most complaints for interference with contract or prospective advantage is not affected by this requirement that a plaintiff allege some wrongful method or motive. This is so because most cases involving these torts entail some patently wrongful conduct on the part of the defendant. Thus, a typical example of the tort occurs when the defendant induces a third party to breach a contract with the plaintiff. In such a case, the defendant's wrongful method—procuring the breach of a legally protected relationship—is apparent from the allegations of fact.' (See *Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33, 38-39 [112 P.2d 631].) No further showing of wrongfulness is necessary.[1] This situation is to be distinguished from the setting where the defendant interferes with relations which are not yet contractual, but merely prospective. In this latter situation there is no inducement to breach a legally protected relationship, so some other element of wrongfulness must be shown. (See *Imperial Ice Co.* v. *Rossier, supra,* 18 Cal.2d at pp. 38-39, *DeVoto* v. *Pacific Fid. Life Ins. Co., supra,* 618 F.2d 1340, 1348.) This wrongfulness may lie in the *method* used; for example, a defendant might usurp the prospective advantage by means of fraud, misrepresentation or duress. (See, e.g., Prosser, Torts (4th ed. 1971) pp. 952-953, 959-960.) More commonly, however, the wrong will be found in defendant's motive.

The most typical example of an improper motive is seen when a defendant appropriates a commission after arranging to cut out a prior agent or middleman. (See, e.g., *Buckaloo* v. *Johnson, supra,* 14 Cal.3d 815; *Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202 [14 Cal.Rptr. 294, 363 P.2d 310]; and *Siciliano* v. *Fireman's Fund Ins. Co.* (1976) 62 Cal.App.3d 745 [133 Cal.Rptr. 376].) The wrongfulness of such a defendant's actions is apparent from the allegations of fact, i.e., that plaintiff earned a prospective advantage and defendant knowingly usurped it. No additional pleading of wrongfulness is required.[2]

---

[1] Whether defendant's inducement is privileged or justified is a matter to be raised by way of affirmative defense.

[2] In *Buckaloo* v. *Johnson, supra,* the California Supreme Court held that "in the real estate brokerage context" no specific allegation of wrongfulness is necessary (14 Cal.3d at p. 827), thus making clear that sufficient wrongfulness will be apparent from the allegation of interference in such a context.

Liability for interference with prospective advantage has not been limited to these typical scenarios; it has been found in situations as varied as the free market interactions which gave rise to this tort. (See, e.g., *Institute of Veterinary Pathology, Inc.* v. *California Health Laboratories, Inc.* (1981) 116 Cal.App.3d 111, 126-127 [172 Cal.Rptr. 74] [defendant surreptitiously plotted to split off from its joint venturer and usurp the latter's business after rendering it unable to compete]; *Lowell* v. *Mother's Cake & Cookie Co., supra,* 79 Cal.App.3d 13 [defendant bought plaintiff's business after depressing its value by telling plaintiff's prospective purchasers that defendant would not renew its contracts with the business]; and *A. F. Arnold* v. *Pacific Professional Ins., Inc., supra,* 27 Cal.App.3d 710, 717 [defendant's interference was allegedly "wrongful and malicious, and *with the intent to injure plaintiff financially* . . ."].) The common denominator shared by these cases is an allegation of wrongfulness. Without this requirement of wrongfulness, we fear that actors in perfectly legitimate economic transactions would be "put to justifying the conduct of [their] business at the whim of a rival." (*Id.,* at p. 716.) It is, therefore, the responsibility of the plaintiff to plead some wrongful conduct by the defendant; plaintiff need not, however, allege that defendant's conduct was not justified or privileged.[3]

It is thus clear that plaintiffs' failure to plead nonjustification did not entitle defendants to an award of summary judgment. The judgment must therefore be reversed unless other grounds exist which will support it. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]; *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117]; see also 6 Witkin, Cal. Procedure (2d ed. 1971) § 230, p. 4220.) They do, as we now discuss.

---

[3]In most cases the difference between wrongfulness and nonjustification is one of degree. Wrongfulness is simple to plead; justification is a more complex concept and its existence "depends upon a balancing of the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, . . ." (*Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 206 [14 Cal.Rptr. 294, 363 P.2d 310].) This balancing should occur at summary judgment or at trial, after the defense of justification has been raised.

In some cases, however, the distinction becomes more than one of degree. Pleadings which allege some wrongfulness need not anticipate or counter complex defenses of privilege and justification. For example, in *Gold* v. *Los Angeles Democratic League, supra,* 49 Cal.App.3d 365, plaintiff, an unsuccessful candidate for City Controller, sued for loss of the prospective advantage of election to that office. Plaintiff alleged that defendants' pre-election mailing falsely stated that plaintiff was not indorsed by the Democratic party, when in fact he was. The court, apparently finding wrongfulness in defendants' misrepresentation, held that plaintiff had stated a cause of action sufficient to withstand a demurrer. (*Id.,* at pp. 375-376.) The court also held, however, that it was *not* the plaintiffs' responsibility to allege that defendants' act was not justified or privileged under the First Amendment or *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412]. The issue of First Amendment justification and privilege was an affirmative defense to be considered at trial. (*Id.,* at pp. 375-376.)

2. *Plaintiffs have made no showing that Schwinn's rejection of the Yamamotos was in any way wrongful.*

■ The papers presented at the summary judgment hearing tend to show that the Rickels had a prospective advantageous relation with the Yamamotos and that Schwinn interfered with this relation by refusing to grant distributorship rights to the Yamamotos. Schwinn admits as much, but argues that its interference was not wrongful.

As noted above, an interference with contract or advantage must be wrongful to be actionable. "The unjustifiability or wrongfulness of the act may consist of the *methods* used *and/or* the *purpose* or motive of the actor." (*Lowell* v. *Mother's Cake & Cookie Co., supra,* 79 Cal.App.3d 13, 18.) In the case at bar, Schwinn's *method* of interference was by refusal to grant distributorship rights to the Yamamotos. The papers presented at the hearing show that this method was not wrongful. The contract between Schwinn and the Rickels provided that the Rickels' distributorship rights were completely personal and nonassignable. Insofar as its method is concerned, Schwinn thus acted well within its rights in not approving what, in effect, would have been the transfer of the distributorship to the Yamamotos.

This brings us to the more difficult question of whether Schwinn's motive or purpose was wrongful. The papers presented to the trial court show that Schwinn rejected the Yamamotos for the purpose of protecting its legitimate business interests. Schwinn claimed that the Yamamotos' capital structure was such that they would not be able to remain in business. This belief was based on evidence showing that the Yamamotos' expenses would be $12,000 greater than those incurred by the Rickels and on profit statements and financial projections which the Yamamotos and the Rickels supplied Schwinn. Such information gave rise to genuine doubts as to whether the Yamamotos could profitably run the shop even after the Rickels altered the sales terms. Schwinn thus established that it rejected the Yamamotos for the reason that it did not wish to become the supplier and creditor of a financially unsound shop.

Against this firm showing of a good faith reason for denial of the Yamamotos' application, the Rickels present no evidence. They make no showing of any bad faith or wrongful conduct on Schwinn's part, nor do they present any evidence of any motive other than Schwinn's legitimate business interests.[4] The only evidence of wrongfulness the Rickels garner is the state-

---

[4] The Rickels obliquely suggest a wrongful motive: They imply that Schwinn rejected the Yamamotos in order to depress the value of the shop, thereby reducing the financial burden on the ultimate buyer of the shop; with lower expenses this buyer would be a more stable Schwinn dealer. This theory, however, is sheer conjecture and is not supported by any evidence introduced by the Rickels.

ment by their agent, Ray, that Schwinn's representatives treated the Yamamotos belligerently and in a "nonprofessional manner" during a meeting. This evidence of impoliteness, however, does not tend to prove any bad faith or wrongful motive on the part of Schwinn.

From the mere fact that Schwinn rejected the Yamamotos, the Rickels infer bad faith. Construing the Rickels' allegations generously and those of Schwinn narrowly, as we must in reviewing a summary judgment (*Slobojan v. Western Travelers Life Ins. Co., supra,* 70 Cal.2d at pp. 436-437), we find that the conclusional allegation of bad faith presented by the Rickels does not overcome Schwinn's well-supported claim of good faith. The Rickels have not shown any facts which would support an allegation of wrongful conduct or wrongful purpose against Schwinn. The summary judgment is affirmed as to the Yamamoto count.

*3. Plaintiffs' cause of action for interference with the prospective sale to Fisher is based entirely on inadmissible hearsay.*

■ Code of Civil Procedure section 437c makes clear that only admissible evidence may be considered in the parties' opposing papers on a motion for summary judgment. Evidentiary objections not made in writing or at the hearing are waived. Here it appears that defendants objected to hearsay statements at the hearing. The trial court noted that plaintiffs' cause of action for interference with the prospective sale to Fisher was entirely based on hearsay, and therefore granted summary judgment as to Fisher. The Rickels do not appear to object to this ruling on appeal. We find the plaintiffs' allegations as to the Fisher count were indeed based wholly on hearsay and that defendants have factually challenged these allegations. (See *Conn v. National Can Corp.* (1981) 124 Cal.App.3d 630, 639 [177 Cal.Rptr. 445].) The grant of summary judgment as to this count is therefore affirmed.

*4. Plaintiffs' cause of action for interference with the sale to the McCreadys alleges no wrongful conduct by Schwinn.*

■ The Rickels allege that their third prospective buyer, McCready, was interested in purchasing the shop but lost interest when told he could not become a Schwinn dealer. While this allegation is based almost entirely on hearsay, it has not been factually challenged by defendants and therefore must be accepted at face value. (*Conn v. National Can Corp., supra,* 124 Cal.App.3d 630, 639.)

The Rickels, however, allege no wrongful method or motive on the part of Schwinn. Their only allegation is that Schwinn told McCready that it had an informal policy of not granting dealership rights to persons who owned

non-Schwinn shops in the area. It appears from the record that Schwinn indeed had such a policy, and that such policy is not per se wrongful. (See *Continental T. V., Inc.* v. *GTE Sylvania Inc.* (1977) 433 U.S. 36 [53 L.Ed.2d 568, 97 S.Ct. 2549].) We find no wrongfulness in Schwinn's truthfully informing McCready of the legitimate business policy which it in fact had. The Rickels have not alleged any facts which impute an improper motive or method to Schwinn in its dealings with regard to McCready. The summary judgment is therefore affirmed as to the McCready count.

The judgment is affirmed.

Thompson, J., and Johnson, J., concurred.