[No. E006027. Fourth Dist., Div. Two Apr. 19, 1989.]

COMMITTEE FOR RESPONSIBLE PLANNING et al., Petitioners and Respondents, v.
CITY OF INDIAN WELLS et al., Respondents;
MONTE SERENO ESTATES, Intervener and Appellant.

COUNSEL

Lynn D. Crandall for Intervener and Appellant.

No appearance for Respondents.

Cynthia Ludvigsen for Petitioners and Respondents.

OPINION

DABNEY, J.—Appeal from order of the trial court denying a motion for relief from the conditions of a writ of mandate. The writ, issued under Government Code section 65755,[1] prohibits the City of Indian Wells (City) from issuing building permits, map approvals, and other discretionary land use approvals until the City brings its general plan into compliance with state law. On appeal, Monte Sereno Estates (Monte Sereno) contends that the facts before the trial court do not support its decision, the trial court applied an incorrect legal standard in determining Monte Sereno's motion, and important policy considerations dictate granting the motion. This case involves an issue of first impression concerning the circumstances under which a court may curtail development under section 65755.

---

[1] All statutory references are to the Government Code unless otherwise indicated.

## FACTS

The Committee for Responsible Planning (Committee) filed an action seeking, among other things, to invalidate the City's general plan. The trial court adopted a detailed statement of decision and issued a writ of mandate after it determined that the City's general plan was invalid. In the writ, the court ordered the City to bring its general plan into compliance with state law. As required under section 65755,[2] the writ also ordered the City to cease issuing any building permits and related permits for residential or nonresidential development, and to cease granting all discretionary land use approvals and zoning changes or variances. However, the writ provided that on noticed motion, interested parties could seek relief from the restrictions of the writ for a particular action, program or project. The court may grant such relief if it finds that approval of the action or project will not significantly impair the City's ability to adopt a general plan or if the application meets the requirements of section 65755, subdivisions (a)(4) through (6).

The City has a population of 2,100 people and is 10,186 acres in size; however, only 3,871 acres are developable. Of this amount, 1,916 acres are undeveloped and vacant.

---

[2] Section 65755 provides that when a court, in an action challenging the validity of a locality's general plan, finds that the general plan or any of its mandatory elements does not comply with statutory requirements, the court must include in its order or judgment one or more of the following provisions: "(a)(3) Suspend the authority of the city . . . to grant subdivision map approvals for any and all categories of subdivision map approvals.

". . . . . . . . . . . . . . . .

"(5) Mandate the approval of any or all final subdivision maps for residential housing projects which have previously received a tentative map approval from the city, . . . when the final map conforms to the approved tentative map, the tentative map has not expired, and where approval will not impact on the ability of the city, . . . to properly adopt and implement an adequate housing element.

". . . . . . . . . . . . . . . .

"(b) Any order or judgment of a court which includes the remedies described in paragraphs (1), (2), or (3) of subdivision (a) shall exclude from the operation of that order or judgment any action, program, or project required by law to be consistent with a general or specific plan if the court finds that the approval or undertaking of the action, program, or project complies with both of the following requirements:

"(1) That it will not significantly impair the ability of the city, . . . to adopt or amend all or part of the applicable plan as may be necessary to make the plan substantially comply with the requirements of Article 5 (commencing with Section 65300) in the case of a general plan, . . .

"(2) That it is consistent with those portions of the plan challenged in the action or proceeding and found by the court to substantially comply with applicable provisions of law.

"The party seeking exclusion from any order or judgment of a court pursuant to this subdivision shall have the burden of showing that the action, program, or project complies with paragraphs (1) and (2)."

Intervener, Monte Sereno, owns a 12.5-acre parcel in the City. The parcel and the surrounding area have been zoned R-1 for many years. After conducting predevelopment planning, engineering and design of a proposed subdivision, Monte Sereno applied in 1987 for a tentative tract map to develop the parcel into 29 residential lots (the project). The city council approved Monte Sereno's application. On April 21, 1988, the City approved the final map for the project, conditioned on Monte Sereno's obtaining relief from the writ.

Monte Sereno intervened in this action and moved for an order to permit the recordation of its final tract map and the issuance of permits it needed to construct off-site improvements.[3] The trial court denied the motion after a hearing. The minute order does not set forth the basis for the court's ruling.

## DISCUSSION

### Standard of Review

To grant relief from the restrictions of the writ, the trial court was required to make a finding that approval of the project would not "impact on the ability of the City to adopt and implement an adequate housing element" in its general plan (§ 65755, subd. (a)(5)) or "significantly impair" the ability of the City to adopt or amend all or part of its general plan (§ 65755, subd. (b)(1)).

On appeal, we must review both a question of law, that is, the meaning of the term "significantly impair" as used in the statute, and a question of fact, that is, whether substantial evidence supported the trial court's implied determination that Monte Sereno's project would significantly impair the adoption of a valid general plan. (See *Hanly* v. *Kleindienst* (2d Cir. 1972) 471 F.2d 823, 828.) We independently construe the meaning of the statute. (See, e.g., *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 83-85 [118 Cal.Rptr. 34, 529 P.2d 66].) ██ However, in reviewing the trial court's determinations on questions of fact, we are bound by the established rules that "all factual matters will be viewed most favorably to the prevailing party, that all questions of credibility are within the province of the trier of fact, that the appellate court ordinarily looks only at the evidence supporting the successful party and disregards the contrary showing, that all conflicts must be resolved in favor of the judgment appealed from and that the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence contradicted or uncontradicted,

---

[3] The City supported Monte Sereno's application for relief from the writ.

which will support the conclusion reached by the trier of fact. [Citations.]" (*McCurter* v. *Older* (1985) 173 Cal.App.3d 582, 585 [219 Cal.Rptr. 104].) The same rule applies whether the trial court made factual findings based on oral testimony or on declarations. (*Trapasso* v. *Superior Court* (1977) 73 Cal.App.3d 561, 568 [140 Cal.Rptr. 820].)

### *Section 65755, Subdivision (b)*

In the trial court, Monte Sereno moved under section 65755, subdivision (b) for relief from the restrictions of the writ. ■ Monte Sereno argues first that the trial court may have applied the wrong legal standard in that the writ states that the court *may* grant relief if it makes certain findings. Section 65755 makes such relief *mandatory* if the court makes those findings. However, the trial court's minute order does not state the court's reasons for denying Monte Sereno's motion for relief. " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193], original italics.) In the absence of any contrary indication in the record, we therefore assume that the trial court followed the correct legal standard in ruling on the motion.

■ Monte Sereno next argues that the term "significantly impair" should be interpreted to mean that the project must be of such size or nature that it would necessarily and significantly reduce the city's options in drafting a general plan. ■ In interpreting section 65755, we begin with the fundamental rule that we " . . . should ascertain the intent of the Legislature so as to effectuate the purpose of the law. 'In determining such intent "[t]he court turns first to the words themselves for the answer." [Citation.] We are required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." [Citations.] "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." [Citation.] "[A] construction making some words surplusage is to be avoided." [Citation.] "When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]' (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 . . . .)" (*Elysian Heights Residents Assn., Inc.* v. *City of Los Angeles* (1986) 182 Cal.App.3d 21, 27 [227 Cal.Rptr. 226].)

 No court has yet construed the meaning of the term "significantly impair" as used in section 65755. In other contexts, however, courts have recognized that the word "significant" poses a difficult problem of interpretation. "As stated by Judge Friendly, construing the phrase 'significantly affecting the quality of the human environment' in NEPA (42 U.S.C. § 4332): 'While . . . determination of the meaning of "significant" is a question of law, one must add immediately that to make this determination on the basis of the dictionary would be impossible. Although all words may be "chameleons, which reflect the color of their environment," [citation], "significant" has that quality more than most. It covers a spectrum ranging from "not trivial" through "appreciable" to "important" and even "momentous." ' [Citations.]" (*No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d at p. 83, fn. 16.)

In *No Oil,* the California Supreme Court construed Public Resources Code section 21151 which requires an environmental impact report on "any project . . . which may have a significant effect on the environment." (13 Cal.3d at p. 82) The court repeated that the word "significant" "is not a term of precision but encompasses a range of meaning. It cannot be adequately defined by a random selection of synonyms from a thesaurus. Facing a spectrum of possible meanings, describing a range extending from projects of relatively minor import to those of truly momentous proportions, the court's task is to indicate the point on this spectrum beyond which the seriousness of the foreseeable impact dictates preparation of an EIR." (*Id.,* at p. 83.) The court took guidance from the fact " 'that the Legislature intended [the California Environmental Quality Act (CEQA)] to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.' [Citations.]" (*Ibid.*) Thus, the court rejected the trial court's construction of the statute which limited preparation of an EIR to projects which may have an "important" or "momentous" effect. (*Id.,* at p. 84.) The Legislature subsequently adopted a controlling definition of "significant effect" in CEQA, i.e, "a substantial or potentially substantial, adverse change in the environment." (Pub. Resources Code, § 21068.)

In the context of the State Planning and Zoning Law (§ 65000 et seq.), the Legislature requires each city in California to adopt a comprehensive, long-term general plan for the physical development, configuration, and character of the city and requires future land use decisions to be consistent with the general plan. (§§ 65300, 65302, 65700 66473.5; *Elysian Heights Residents Assn., Inc.* v. *City of Los Angeles, supra,* 182 Cal.App.3d at p. 27.) A general plan must contain seven mandatory elements, including: (a) a land use element; (b) a circulation element; (c) a housing element; (d) a

conservation element; (e) an open-space element; (f) a noise element; and (g) a safety element. (§ 65302.) "The general plan 'is, in short, a constitution for all further development within the city.' [Citations.]" (*Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 997 [165 Cal.Rptr. 514].)

If a court finds that a local agency's general plan is inadequate, it must order that no building permits, subdivision approvals, or rezoning can occur. (§ 65755, subds. (a)(1)-(3); *Friends of "B" Street, supra,* 106 Cal.App.3d at p. 998.) Section 65755, subdivisions (a)(4)-(6) and (b) provide exceptions which permit certain developments to continue despite defects in the general plan.

The Legislature has given us guidance on the preeminent importance of the housing element of a general plan. "In enacting Government Code, article 10.6 (§§ 65580-65589.8), detailing requirements for the mandatory housing element, the Legislature declared the availability of housing is a matter of 'vital statewide importance' and 'the early attainment of decent housing and a suitable living environment for every California family is a priority of the highest order.' (§ 65580, subd. (a).) To attain the state housing goal, the Legislature found, requires 'cooperative participation' between government and the private sector (§ 65580, subd. (b)), cooperation among all levels of government (§ 65580, subd. (c)), and use of state and local governmental power 'to facilitate the improvement and development of housing' for 'all economic segments of the community' (§ 65580, subd. (d)). The Legislature recognized each local government in adopting a housing element must also consider economic, environmental and fiscal factors as well as community goals set forth in the general plan. (§ 65580, subd. (e).)

"The Legislature stated its intent in enacting article 10.6 was inter alia, 'to assure . . . cities recognize their responsibilities in contributing to the attainment of the state housing goal' (§ 65581, subd. (a)) and 'will prepare and implement housing elements which, along with federal and state programs, will move toward attainment of the state housing goal.' (§ 65581, subd. (b).)" (*Buena Vista Gardens Apartments Assn.* v. *City of San Diego Planning Dept.* (1985) 175 Cal.App.3d 289, 295 [220 Cal.Rptr. 732].)

Because of the importance the Legislature has placed on an adequate general plan, and particularly, on an adequate housing element, we believe that the word "significant" in section 65755 should have a similar meaning as in CEQA, i.e., a "substantial or potentially substantial, adverse change" in the ability of the City to adopt general plan which complies with state law.

We thus examine the record before the trial court to determine whether substantial evidence supports the court's finding, applying the definition discussed above for the term "significantly impair." In its statement of decision on the Committee's petition for a writ of mandate, the trial court explained in detail the deficiencies in the City's general plan. The court found that the general plan included each element, but the various elements failed to address many required issues and there were inconsistencies among various elements. The court found that ". . . because of the limited size of [the City], the limited area which is undeveloped, the limited area which remains available for implementation of a valid general plan and valid existing general plan, . . . it is necessary to impose restrictions throughout the [C]ity. . . ." In particular, the court found "a complete absence of discussion of provision for moderate or low-income housing." The court further found "no discussion of new housing construction needs or employment patterns within the [C]ity, which is required by statute. . . ."

The parties, in their filings in support of and in opposition to the motion, focused primarily on the project's effect on the City's ability to adopt an adequate housing element. In opposition to Monte Sereno's motion for relief, the Committee filed declarations of Tom Dodson, a land use expert and environmental consultant.[4] In one declaration, Dodson stated that the potential impact of the project on the City's ability to adopt a general plan must be evaluated in terms of the cumulative effect of other proposed developments. A proposed resort project, which includes about 4,500 hotel rooms, has been approved by the city council. The new general plan must integrate affordable housing units for the resort's employees into its land use, housing, and circulation elements. In another declaration, Dodson stated that allowing the project to proceed "may foreclose important land use options in the future" including the City's ability "to meet [its] commitment to low-income housing." We conclude that the Dodson declarations identified a substantial, or potentially substantial adverse effect on the City's ability to adopt a valid housing element in its general plan.

 Although Monte Sereno submitted declarations of its own experts to the effect that approval of the project would not significantly impair the City's ability to adopt a general plan in compliance with state law, resolution of conflicts in the evidence is a matter for the trial court. (*Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031,

---

[4]Monte Sereno contends that Dodson's declarations contain no factual data, but only unsupported conclusions and arguments. However, Monte Sereno did not object in the trial court to Dodson's declarations. Moreover, in the declarations, Dodson expressed his expert opinions on the matters in controversy, and the declarations contain sufficient facts to qualify Dodson as an expert.

1053 [143 Cal.Rptr. 415].) The trial court's decision on the motion was supported by substantial evidence.

*Section 65755, Subdivision (a)(5)*

Monte Sereno also argues that the trial court erred under section 65755, subdivision (a)(5) when it denied Monte Sereno's motion for relief from the restrictions of the writ. Monte Sereno claims that its project had received tentative map approval before the writ was issued; the City's approval of the final map necessarily involved a finding of conformity (§ 66473); the tentative map approved in 1987 remains open for at least 24 months (§ 66452.6, subd. (a)); and "[i]t is difficult to see how, . . . the approval of a 12 acre, 29 lot subdivision could possibly impact on the ability of the City to properly adopt and implement an adequate housing element."

Monte Sereno based its motion in the trial court solely on section 65755, subdivision (b) and raised the argument for the first time on appeal that the court should have approved the project under section 65755, subdivision (a)(5). A party may not raise an issue for the first time on appeal when it was not set forth in the pleadings or addressed in the evidence in the trial court. (*Rickel* v. *Schwinn Bicycle Co.* (1983) 144 Cal.App.3d 648, 655-656 [192 Cal.Rptr. 732].) " '[T]he opposing party should not be required to defend for the first time on appeal against a new theory that "contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial." ' [Citations.]" (*Id.* at p. 656.) An exception to this rule occurs when the new theory raises only questions of law and is based solely on facts already in the record. (*Ibid.*)

To apply section 65755, subdivision (a)(5), a trial court must make specific findings.[5] Because Monte Sereno did not base its motion on this section, the issues whether the tentative map and the final map for the project conformed or whether Monte Sereno's project would affect the City's ability to adopt and implement an adequate housing element were not even before the court; the court had no reason to make findings on these matters.

Monte Sereno urges that we determine as a matter of law that the final map conformed to the tentative map because section 66473 requires conformity. However, if the Legislature had intended that the court could conclusively rely on section 66473 to determine that the tentative and final maps conformed, it would not have specified in section 65755, subdivision

---

[5] See footnote 2, *ante.*

(a)(5) that the trial court must make such a finding. We cannot construe the statute in such a way as to make this provision surplusage. (*Watkins* v. *Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 400 [6 Cal.Rptr. 191].) Monte Sereno did not present evidence of tentative and final map conformity in the trial court. Thus, Monte Sereno may not raise its new theory on appeal because its motion in the trial court "did not bring the relevant factual situation sufficiently into controversy." (*Rickel, supra,* 144 Cal.App.3d at p. 656.)

## DISPOSITION

The judgment is affirmed.

Campbell, P. J., and Hollenhorst, J., concurred.