**TRANS WORLD AIRLINES, INC. Plaintiff,**

v.

**AMERICAN COUPON EXCHANGE, INC., and Neil Weisman, Defendants.**

**And Related Counterclaim.**

**No. CV 87–4478 AHS (Tx).**

United States District Court, C.D. California.

March 24, 1988.

James M. Derr, Belcher, Henzie & Biegenzahn, Los Angeles, Cal., for plaintiff.

William B. Hanley, Behrens, Recht, Finley, Hanley & Holford, Santa Ana, Cal., for defendants.

## OPINION ON ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER GRANTING CERTIFICATION FOR APPEAL

STOTLER, District Judge.

Plaintiff Trans World Airlines, Inc. ("TWA") filed a motion for summary judgment on the complaint and counterclaim in this matter on December 11, 1987. The

Court heard this motion on January 4, 1988. By this Order, the Court grants in part and denies in part plaintiff's motion for summary judgment on the complaint, grants plaintiff's motion for summary judgment on the counterclaim, and issues its certification for appeal pursuant to 28 U.S.C. § 1292(b).

## FACTS

TWA is a common carrier of passengers for hire. As an advertising promotion designed to encourage travel on TWA, increase revenues, and develop passenger loyalty, TWA instituted the Frequent Flyer Bonus Program ("FFB Program") in 1982. Under the FFB Program, a participating passenger is awarded credit for each mile flown on TWA or other designated airlines. Upon flying a specified number of miles, a passenger becomes entitled to certain awards in the form of free, discounted or upgraded travel.

The rules and regulations of the FFB Program specify the manner in which a qualified passenger may receive his or her award. These rules and regulations are published and filed as tariffs with the Department of Transportation pursuant to Part 221 of 14 C.F.R. A passenger qualified for an award must notify TWA in writing of that fact, and must notify TWA of the name in which the award certificate is to be issued. When TWA receives notification from the participating passenger, it will issue FFB award certificates in the name(s) of the person(s) designated by the participating passenger.

At the initiation of the FFB Program in 1982, the tariffs allowed the participating passenger to designate any party or parties to use the award in the FFB Program member's place. TWA amended the tariffs on November 16, 1983, effective January 15, 1984, to provide that FFB Program awards "are non-transferable, may not be bartered, sold, or assigned, and may be used only by the designated parties." TWA issued a further change on December 1, 1983, effective January 30, 1984, that TWA reserved the right to disqualify from participation in the FFB Program any person who violated eligibility, mileage accumulation, or other rules governing the FFB Program. Finally, TWA amended its tariffs on February 14, 1986, effective April 15, 1986, to provide that a FFB Program member may accept a Bonus Award for his or her own use, or designate a family member, legal dependent, or relative to use the award in the member's place. The tariff defined a "relative" as the participant's "spouse, parents, children, brothers and sisters, grandparents, grandchildren, aunts, uncles, nieces, nephews, first cousins and their spouses, or in-laws." TWA's tariff requires notice in writing of the designee's name and relationship to the participant. TWA specifies by the tariff that FFB awards are intended for the benefit of members and their families. Accordingly, the tariff effective from 1986 to the present provides that "[c]ertificates issued to other than the above, or those deemed to have been sold or bartered, are void."

Over the past few years, a secondary market for accumulated bonus miles has emerged. Defendant American Coupon Exchange, Inc. ("ACE") acts as broker, soliciting, purchasing and selling earned frequent-flyer travel rights, awards and certificates, including FFB Program awards. ACE has been in business since June, 1983. Currently, there are over 40 other coupon brokers in operation. Through advertisements in newspapers and travel magazines, ACE offers to purchase a FFB Program certificate from a participating FFB member qualified for an award, redeems the certificate, and sells the TWA airline ticket to another person at a price estimated at 30–70 percent of the cost of a full-fare ticket. ACE's advertisements solicit both persons qualified for travel awards who wish to sell those awards and those who wish to purchase tickets at a discounted rate. Although ACE contends that its brokering business is legal, it instructs ticket buyers to refrain from telling the airline where he or she purchased the ticket, and to tell the airline that he or she is a relative of the FFB Program member from whom the award was purchased.

Apparently TWA has been aware of this practice since 1983, and in response has changed the language of the rules and regulations of the FFB Program to prevent

this brokering activity. TWA has also tried informally to discourage this activity by questioning the ticket-holder about his or her relationship to the FFB member, but for obvious reasons this practice has been largely unsuccessful. Because tariff changes and other attempts at monitoring have not curbed ACE's activities, TWA instituted this action.

### PROCEDURAL BACKGROUND

TWA filed a complaint against ACE and its president and alleged alter ego Neil Weisman on July 7, 1987, alleging fraud and interference with business relations, and requesting damages, and declaratory and injunctive relief. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendants (collectively "ACE") answered on July 28, 1987, and filed a counterclaim alleging violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.

On August 28, 1987, TWA filed a motion to dismiss the counterclaim and strike certain affirmative defenses which also alleged antitrust violations. On September 4, 1987, plaintiff filed a motion for a preliminary injunction enjoining ACE from purchasing FFB certificates and from selling tickets on TWA based in whole or in part on brokered FFB certificates. Defendant ACE filed a motion for summary judgment on September 14, 1987, alleging that TWA's tariff restrictions were invalid as a matter of law.

The Court heard these motions on October 8, 1987 and granted TWA's motion to dismiss the counterclaim and to strike certain affirmative defenses, finding that ACE failed to allege that a conspiracy or agreement existed between TWA and any other business entity. ACE further failed to allege injury to market competition, and merely alleged injury to itself as a competitor. These allegations were insufficient to support a cause of action for violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Regarding the alleged § 2 violation, the Court found that even assuming TWA operated a monopoly over FFB awards, it had advanced an unrefuted valid business reason for doing so and was therefore not in violation of 15 U.S.C. § 2. ACE's request

for 30 days leave to amend the counterclaim was granted.

The Court denied TWA's motion for a preliminary injunction, finding that TWA was unsuccessful in demonstrating a threat of irreparable harm and establishing that damages would not fully compensate it for its loss of fares. Furthermore, TWA was unable to demonstrate that ACE's activities caused incalculable damage to TWA's goodwill.

The Court also denied defendant's motion for summary judgment. The Court took judicial notice of the tariffs in question, and found that ACE failed to set forth specific facts which indicated that TWA's tariffs were unenforceable as a matter of law.

On November 24, 1987 ACE filed a First Amended Counterclaim alleging antitrust violations and adding claims for interference with business relations and declaratory judgment. Plaintiff filed motions for summary judgment on both the complaint and the counterclaim on December 11, 1987, and the Court heard those motions on January 4, 1988.

### SUMMARY JUDGMENT ON THE COMPLAINT

#### 1. *Validity of Tariffs*

■ The issue at the core of each motion is the validity of TWA's tariffs. Prior to January 1, 1985, the Court could have referred this determination to the Civil Aeronautics Board ("CAB") for an advisory opinion. *See* 49 U.S.C.App. §§ 1373, 1551. Deregulation of the airline industry eliminated the CAB's authority to determine the reasonableness of tariffs, as well as the doctrine of primary jurisdiction. *First Pennsylvania Bank v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1120 (3d Cir.1984). Therefore, resort to an agency determination is unavailable. In any event, while courts gave substantial weight to the CAB's determinations, "the question whether a tariff is against public policy is ultimately a judicial question requiring the application of federal common law."

*Klicker v. Northest Airlines, Inc.,* 563 F.2d 1310, 1313 (9th Cir.1977).

TWA's tariffs are currently on file with the Department of Transportation, which assumed the role of the CAB in accepting or rejecting proffered tariffs. 49 U.S.C.App. § 1551(b). It is well settled that tariffs represent the conclusive and exclusive rights and liabilities between an airline and its passengers. *United States v. Edwards,* 602 F.2d 458, 462 (1st Cir. 1979). Courts reach this result by characterizing the tariffs as a binding contract between the airline and its passengers, or by treating them binding as a matter of law. *Id.* at 462 n. 2. Here, TWA's tariffs preclude passengers from transferring or assigning their FFB awards to anyone except a designated family member, and provide for membership cancellation of any passenger who violates that tariff. The parties agree that if the tariffs are valid in terms of public policy, they represent a binding agreement which would serve to bar the activities of ACE.

In its prior motion for summary judgment, ACE argued that the tariffs violated public policy to the extent they prevented assignment of a contract right and/or constituted a restraint on alienation. The Court found both arguments unpersuasive. ACE relied on § 1459 of the California Civil Code which provides that non-negotiable instruments are assignable. However, § 105(a) of the Federal Aviation Act, 49 U.S.C. App. § 1305(a), provides that tariffs relating to the service of an air carrier preempt any state law. The transferability provision in TWA's tariff thus serves to preempt the California statute. A tariff is law, not a mere contract. *Carter v. AT & T,* 365 F.2d 486, 496 (5th Cir.1966), *cert. denied,* 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). Therefore, assignability restrictions contained in the tariffs are enforceable despite state law to the contrary.

Second, ACE claimed that the restriction is an invalid restraint on alienation. While restraints on the alienation of property are disfavored, they may be upheld when not repugnant to a plain provision of the law and not unreasonable.

*Godley v. Kentucky Resources Corp.,* 640 F.2d 831, 836 (6th Cir.1981). Because ACE pointed to no specific law that the restriction violates, the Court must assess the reasonableness of the restrictive tariff provisions.

TWA created the FFB Program as an incentive program when it was under no obligation or duty to do so. In turn, it developed rules and regulations to govern and to an extent restrict the scope of the program. In an analogous case, the court in *Milhizer v. Riddle Airlines, Inc.,* 185 F.Supp. 110, 113 (E.D.Mich.1960), *aff'd.,* 289 F.2d 933 (6th Cir.1961), observed that an air carrier had the right to determine its rates for handling air freight in accordance with the risk involved. Similarly, TWA's FFB Program is structured to balance the benefit of receiving additional publicity and customer loyalty with the cost of providing travel awards. Had TWA intended its FFB awards to be redeemable for cash, it might have scaled its mileage redemption rates differently, or precluded assignability of these awards entirely in an effort to reach a different balance. Accordingly, the non-transferability of these awards is an element of their value intended by TWA. To the extent that a FFB award may constitute "property," the award provided to the qualifying passenger is accompanied by restrictions which are an integral part of that right. There is nothing unreasonable about this scheme.

The tariffs in question do not violate public policy. Their validity thus upheld, they conclusively govern the rights and liabilities of the parties.

### 2. Fraud

TWA's first cause of action alleges fraud. Under California law, a claim of fraud requires proof of the following elements: "(1) that the defendant ma[d]e a false representation, (2) that defendant had knowledge of the falsity, (3) that defendant intended to induce reliance, (4) that plaintiff actually and reasonably relied, and (5) that plaintiff suffered actual damages." *Crocker–Citizens National Bank v. Control Metals Corp.,* 566 F.2d 631, 636 (9th Cir.1977).

■ A finding that ACE's activities are fraudulent would require this Court to characterize the holder of a brokered ticket as an agent, acting on behalf of or representing ACE. *See* Cal.Civ.Code § 2295. Although ACE knowingly instructs the purchaser of the FFB award certificate to represent falsely that he or she is the relative of the FFB award winner, it is the purchaser who ultimately makes this false representation to TWA. ACE has no control over the purchaser at the time this representation is made and the purchaser is not acting for the benefit of ACE. According to TWA, a handful of passengers who were questioned about their relationship to the FFB award winner admitted that they were not related to that winner. Therefore, while ACE serves to encourage its customers to make a false representation, it cannot be said that ACE's customers function as its agents. ACE merely serves to encourage persons to make representations which admittedly they could make independently in order to conceal private transactions without the assistance of ACE.

Although ACE's activities do not meet the first requirement necessary for a finding of fraud, the other four requirements appear to be established. ACE is aware that its instructions are in direct contravention of the tariff provisions. ACE intends for its purchaser's representations to induce reliance on the part of TWA that the certificate holder is legitimate, thus causing TWA to issue a ticket to that person. While the intent of a party should not be presumed, "it may be inferred where a party knowingly misstates a material fact, knowing that the party to whom it is made will rely upon it." *Pinken v. Frank,* 704 F.2d 1019, 1026 (8th Cir.1983). ACE instructs the person selling the FFB award certificate to sign the award and leave the designee entry blank, and instructs the customer purchasing the certificate to misstate his or her relationship to the person from whom the FFB award certificate was obtained. These directions demonstrate ACE's intent. It is uncontroverted that TWA relies on the information provided on the certificates in issuing tickets. Finally, damages, while difficult to ascertain, are present if it is assumed that the brokered ticket holder is occupying a seat that could have been used by a legitimate frequent flyer or a passenger paying full fare.

■ Denial of summary judgment on the fraud claim does not imply that ACE's defenses are meritorious. ACE claimed that the invalidity of TWA's tariffs precluded a finding that its activities are illegal. Because the Court has determined that the tariffs are valid and binding, this argument must fail. ACE also contended that TWA waived or is estopped from asserting fraud in light of its knowledge of the brokering practice during the past few years. TWA, however, has been attempting to curtail the practice through tariff changes and other informal monitoring methods prior to initiating this action. These measures indicate that TWA did not intend to waive its right to assert a claim against ACE. Moreover, continuing to do business with passengers who may be using brokered tickets does not waive TWA's fraud claim as a matter of law. *See Royal Typewriter Co. v. Xerographic Supplies Corp.,* 719 F.2d 1092, 1104 (11th Cir.1983). When, after substantial performance, it would be economically unfeasible for a defrauded party to terminate a business relationship after the fraud has been discovered, that party may continue the relationship and then bring a suit for damages. *Thor Power Tool Co. v. Weintraub,* 791 F.2d 579, 585 (7th Cir.1986). Because TWA's FFB Program is substantially established, and because it would be economically unfeasible to attempt a more thorough investigation of every ticket obtained with FFB mileage, TWA is not precluded from asserting fraud.

Despite the lack of merit in ACE's defenses, summary judgment on the claim for fraud must be denied due to the attenuated relationship between ACE's instructions and the brokered ticket holder's representations to TWA.

3. *Interference with Business Relations*

■ TWA's second cause of action is for interference with business relations. The elements of this tort are: 1) an economic relationship between plaintiff and a

third party, 2) knowledge by the defendant of the existence of that relationship, 3) intentional acts on the part of the defendant designed to disrupt the relationship, 4) actual disruption of the relationship, and 5) damages proximately caused by this conduct. *Buckaloo v. Johnson*, 14 Cal.3d 815, 827, 122 Cal.Rptr. 745, 537 P.2d 865 (1975). TWA has established that ACE's purchase and sale of FFB award certificates meet these requirements.

TWA contends that the relationships which are involved are those with FFB Program members, other passengers of TWA, and travel agencies. ACE admits knowledge of each relationship. ACE further admits that it solicits FFB award certificates from FFB Program members which causes them to violate the tariff expressly prohibiting commercial transfer, thus giving TWA the cause and authority to terminate these members from the Program. ACE's activity thus disrupts the contractual relationship between TWA and its FFB Program members. It further disrupts the relationship between TWA and the flying public to the extent that other persons are precluded from flying on TWA because a brokered ticket holder is occupying a seat and are discouraged from doing business with TWA directly or an appointed travel agency. TWA also claims it has ceased doing business with ten travel agencies because it discovered they were transacting brokered tickets. However, only one of these agencies was terminated directly because of ACE. The damages caused by this activity are the same as those outlined in the above fraud claim, consisting primarily of a loss of fares.

ACE's only defense to this claim is that its conduct must be "wrongful" to be actionable. *See Rickel v. Schwinn Bicycle Co.*, 144 Cal.App.3d 648, 657, 192 Cal.Rptr. 732 (1983). Holding TWA's tariffs valid implies that ACE's conduct is clearly wrongful because it violates the express provisions prohibiting sale. Furthermore, ACE's conduct is also wrongful to the extent it violates 49 U.S.C. App. § 1373(b)(1), providing; "No ... ticket agent shall charge or demand or collect or receive a greater or less or different compensation for air transportation, or for any service in connection therewith, than the rates, fares and charges specified in then currently effective tariffs of such air carrier...." A "ticket agent" is defined as "any person, not an air carrier or a foreign air carrier, and not a bona fide employee of an air carrier or foreign air carrier, who, as principal or agent, sells or offers for sale any air transportation, or negotiates for, or holds himself out by solicitation, advertisement, or otherwise as one who sells, provides, furnishes, contracts, or arranges for, such transportation." 49 U.S.C. App. § 1301(37). To the extent that ACE solicits and sells FFB award certificates, it may be characterized as a ticket agent within the meaning of the statute, and thus its offering discounted airline tickets may be considered wrongful.

Because TWA has demonstrated that ACE's activities meet the requisite elements for a finding of interference with business relations, and because ACE has set forth no viable defense thereto, the Court grants summary judgment on TWA's second cause of action. The amount of damages remains to be determined.

### 4. *Permanent Injunction*

TWA seeks a permanent injunction against ACE and Neil Weisman, all those acting by, through, or in concert with them, enjoining them from engaging, directly or indirectly, in the purchase, sale, barter or brokering of TWA FFB award certificates or notifications of acceptance of such awards.

Earlier, TWA sought a comparable preliminary injunction which the Court denied because it was unpersuaded that money damages would not fully compensate TWA for any loss sustained due to brokering activity. TWA asserted that its damages amounted to the loss of TWA's profit on each seat occupied by a brokered ticket holder which could have been sold to a full-fare passenger, assuming some rate of reduction for flights at less than full capacity. TWA also claimed that its resulting loss of goodwill was incalculable. The Court found that each of these losses could be compensated adequately through damages. Because ACE would have been put out of business by an injunction, the Court

also found that the balance of hardships tipped in favor of ACE.

At this stage, the Court is convinced that while damages would compensate TWA for any loss it has sustained, the precise amount would be difficult, if not impossible, to calculate. There is no readily available method of ascertaining the number of persons who were dissuaded from purchasing a regular ticket on TWA because they obtained a brokered ticket, or the number of persons who were precluded from flying on TWA because a brokered ticket holder occupied a seat.

An injunction is warranted when there is both lack of an adequate remedy at law and irreparable injury. "If an injury cannot be adequately remedied at law, because damages would be either inadequate or unascertainable, the injury is generally held irreparable." *International Association of Firefighters, Local 2069 v. City of Sylacauga*, 436 F.Supp. 482, 492 (N.D.Ala.1977). In this case, damages already incurred are unascertainable. Moreover, if ACE is allowed to continue to broker TWA's FFB award certificates, then damages will continue to accrue. An injunction may be framed to bar future violations. *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1022 (9th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).

Accordingly, the Court finds that a permanent injunction is necessary both to fully compensate TWA because damages suffered are unascertainable and to prevent future harm.

### 5. *Declaratory Judgment*

TWA's fourth cause of action seeks a declaratory judgment of the rights and liabilities of the parties. More specifically, TWA requests that the Court declare that TWA's two most recent tariffs are valid and binding on the parties. In holding that TWA's tariffs do not violate public policy, the Court thereby rules in plaintiff's favor on the request for declaratory relief.

### SUMMARY JUDGMENT ON THE COUNTERCLAIM

At the hearing on October 8, 1987, the Court granted TWA's motion to dismiss the counterclaim and granted ACE 30 days leave to amend. ACE filed a First Amended Counterclaim on November 24, 1987, again alleging Sherman Act violations and adding counts for interference with business relations and declaratory relief.

ACE alleged that TWA and Airlines Reporting Corporation ("ARC") engaged in an agreement to destroy the market for selling frequent-flyer awards. ARC functions as a clearinghouse among approximately 135 airlines and 22,000 travel agencies. It manages two main functions: 1) an accreditation program for designating competent travel agents for the sale of air transportation, and 2) a computerized system through which travel agents report sales and remit proceeds thereof to the airlines concerned. In conjunction with this system, ARC supplies blank, standard form airline tickets and other blank, standard form accountable documents to travel agents to enable them to issue airline tickets and other travel packages. After a travel agency issues a ticket, the portion known as the "auditor's coupon" is detached and returned to ARC. ARC then segregates these coupons by airline, forwarding funds collected for the tickets and providing an accounting to each travel agency for commissions earned.

During the past four years, TWA and ARC have been involved in a contractual relationship such that any travel agency investigated and found qualified by ARC will automatically be appointed by TWA and will be authorized to issue tickets for transportation on TWA. A qualified agency enters into an Agency Reporting Agreement with ARC, which provides that the agency agrees to abide by both ARC's rules and instructions, and those of the airlines with which it has appointments. To comply with ARC's rules, the travel agency issuing a ticket obtained through a FFB award certificate must have a FFB certificate attached to the auditor's coupon issued in conjunction with that ticket in order to process the transaction and forward the documents to TWA. If no FFB certificate is attached, ARC will reject the coupon and return it to the travel agency.

In the First Amended Counterclaim, ACE alleged that TWA and ARC conspire to refuse to accept FFB certificates as payment for tickets issued by qualified travel agencies and to terminate the authority of travel agencies who issue tickets in exchange for FFB certificates that had been bartered or sold. ACE alleged that because TWA and ARC have complete control over tickets issued for travel on TWA, their agreement has the effect of eliminating coupon brokering.

TWA admits that once it ascertains that a travel agency has knowingly dealt in brokered FFB certificates, it takes appropriate action, including termination of that agency's authority to issue tickets on TWA. The decision to terminate an agency is made internally by TWA. Once this decision is made, TWA notifies the travel agency of its termination, and retrieves its identification plates from that agency. Other airlines and ARC are notified of this decision, and ARC is notified specifically that TWA will no longer allow its ticket stock to be issued by the terminated agency. ARC is not involved in the decision to terminate, but merely abides by TWA's decision. As of December 1987, TWA had terminated ten agencies due to their dealing in brokered FFB certificates, but only one of these agencies was identified as doing business with ACE. Termination does not jeopardize the existence of these travel agencies, as the agency remains free to sell tickets on behalf of all other airlines with which it has appointments.

### 1. *Violation of 15 U.S.C. § 1*

Count 1 of the First Amended Counterclaim alleges a violation of § 1 of the Sherman Act, 15 U.S.C. § 1, which provides in part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be guilty of a felony.

To establish a § 1 violation, ACE must demonstrate that TWA's conduct was unreasonable. *Ron Tonkin Gran Turismo,*

*Inc. v. Fiat Distributors, Inc.,* 637 F.2d 1376, 1381 (9th Cir.), *cert. denied,* 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981). Unreasonableness is analyzed under two approaches: a per se analysis, which declares certain practices to be presumptively illegal, and a rule of reason analysis, which requires an investigation into the effect on the relevant market of conduct which is not per se illegal.

A per se violation is one which on its face "would always or almost always tend to restrict competition and decrease output." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1108 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Because anticompetitive effects need not be alleged in a per se violation, the courts have been unwilling to extend this doctrine beyond a few specific practices. Per se offenses are limited to four categories: horizontal and vertical price fixing, horizontal market division, group boycotts or concerted refusals to deal, and tying arrangements. *Cascade Cabinet Co. v. Western Cabinet & Millwork, Inc.,* 710 F.2d 1366, 1370 (9th Cir. 1983). The Ninth Circuit in *A.H. Cox & Co. v. Star Machinery Co.,* 653 F.2d 1302, 1305 n. 5 (9th Cir.1981), declined to establish a fifth category covering vertical combinations which eliminate a competitor.

TWA's actions do not fall within any of the per se categories. The only activity which could potentially be analogous to the activities of TWA and ARC is a group boycott or concerted refusal to deal. The classic example of a group boycott is where businesses at one level threaten a business at another level with a boycott to induce that business not to deal with competitors. *Weiss v. York Hospital,* 745 F.2d 786, 819 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). Here, ACE alleges that TWA and ARC have conspired to prohibit qualified travel agencies from dealing with ACE. TWA and ARC are not competitors, and therefore any agreement between the two cannot be classified as a horizontal combination. *See Key Financial Planning*

*Corp. v. ITT Life Insurance Corp.*, 828 F.2d 635, 641 (10th Cir.1987).

The per se rule never should be automatically applied when a concerted refusal to deal is vertical. *Cascade Cabinet*, 710 F.2d at 1371. Instead, the question becomes whether the particular restraint has such a "pernicious effect on competition and ... [is void] of any redeeming virtue" to warrant the conclusive presumption of the per se rule. *Id.* In this instance, ACE has not demonstrated that enforcement of TWA's tariffs will restrict competition or decrease output, two factors necessary for extension of the per se rule. *See id.* Moreover, TWA's actions in terminating certain travel agencies are an effort to enforce the provisions of the FFB Program tariffs. Accordingly, because TWA's actions do not unreasonably harm competition and have a legitimate redeeming purpose, they should not be subject to the per se rule.

Furthermore, a particular restraint is classified as a per se violation only after courts have had considerable experience with the business relationship in question. *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 9, 99 S.Ct. 1551, 1556, 60 L.Ed.2d 1 (1979). Because the emergence of both frequent-flyer programs and agencies brokering mileage awards are relatively new phenomena, courts have not addressed the effect of the relationship between either the airlines and its appointed travel agencies or the airlines and ARC. Lacking experience with these business practices, the Court finds that application of the per se rule is unwarranted.

If the claimant cannot establish a per se violation, then the allegation must be analyzed with reference to the rule of reason. A cause of action under this analysis requires: "(1) An agreement among two or more persons or distinct business entities; (2) Which is intended to harm or unreasonably restrain competition; (3) And which actually causes injury to competition." *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 290 (9th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). Generally, the rule of reason requires that "the restraint in question affect market prices or otherwise deprive the consuming public of the benefits of free competition." *Stifel, Nicolaus & Co. v. Dain, Kalman & Quail, Inc.*, 578 F.2d 1256, 1259 (8th Cir.1978).

ACE has established the first factor, that TWA and ARC have an agreement, although that agreement does not encompass the decision to terminate appointed travel agencies for dealing in brokered FFB award certificates.

Second, ACE must demonstrate that TWA and ARC's agreement is intended to unreasonably restrain competition. The Court has determined that TWA's actions are not unreasonable to the extent that they are merely an effort at enforcement of their tariffs. Moreover, TWA would be in violation of 14 C.F.R. § 221.3(b), prohibiting an air carrier from demanding, collecting or receiving a fare different from that published in its tariffs, if it acquiesced in the existence of the market for brokered FFB certificates. Furthermore, to say that TWA and ARC have combined to restrain competition assumes that TWA and ACE compete in the same market. In fact, the two deal in discretely different markets. TWA awards airline tickets in exchange for FFB certificates, while ACE brokers those certificates for cash. TWA's actions cannot be held to unreasonably restrain competition.

In *Sports Center, Inc. v. Riddell, Inc.*, 673 F.2d 786 (5th Cir.1982), the court discussed the antitrust implications of defendant's enforcement of a reasonable anti-bootlegging policy, which included asking its dealers to report infractions of the policy. The court observed that "[o]bviously, every manufacturer has a natural monopoly over the distribution of its products. That monopoly, however, does not contravene the antitrust laws." *Id.* at 791. Manufacturers who desire to avoid dealing directly with the consumer, and prefer to deal with wholesalers or retailers, often place restrictions on the sale of their products. These restrictions may relate to the designation of a customer pool. The *Sports Center* court concluded that unless decidedly unreasonable, these vertical re-

strictions on distribution are allowable and often desirable. *Id.* In this instance, TWA seeks to deal directly with the customer, or FFB member, and avoid dealing with brokering agencies. The *Sports Center* court's rationale for upholding vertical restrictions should apply to the FFB award certificate restrictions in this case.

Furthermore, were ARC and TWA shown to be acting in concert to terminate travel agencies which deal with bonus award brokers, the practice may be likened to the agreement of the dealers in *Sports Center* to report violations of the manufacturer's anti-bootlegging policy. Because such agreement is reasonable, enforcement of the restriction is not the equivalent of a conspiracy. *Id.* at 791. Accordingly, TWA's transfer limitation does not meet the second factor of the rule of reason analysis.

Nor do TWA's actions meet the third factor. A critical aspect of counterclaimant's case is a demonstration of injury to competition, or market impact. *Cascade Cabinet*, 710 F.2d at 1373. Elimination of a single competitor does not satisfy this requirement. *Kaplan*, 611 F.2d at 291. Impact must be demonstrated by reference to both the relevant product and geographic markets. *Id.* In this case, there can be no relevant product market in view of the express restrictions contained within the FFB Program tariffs. In essence, ACE and other mileage brokers have developed a black market for the purchase and sale of accumulated mileage awards. Now, ACE asks the Court to hold that the enforcement of TWA's restrictions violates § 1 of the Sherman Act because it impinges on this black market. This the Court declines to do. Since there is no legitimate product market, the Court need not address the relevance of any geographic market.

The Supreme Court has observed that "[v]ertical restrictions promote interbrand competition by allowing the manufacturer to achieve certain efficiencies in the distribution of his products." *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 54, 97 S.Ct. 2549, 2559, 53 L.Ed.2d 568 (1977). Characterizing TWA as a manufacturer of FFB award certificates, the vertical restraint it imposes on the distribution of its product is clearly reasonable and performs certain efficiencies. For example, restrictions allow TWA and other airlines to compete with each other in providing greater benefits to their mileage program members, such as awarding triple mileage for flights flown after an initial qualifying flight. Knowledge that accumulated miles were to be sold to the general public might well prevent airlines from offering these bonus programs, since their purpose is to develop customer loyalty and encourage additional travel on a particular airline.

Manufacturers are given wide latitude in establishing a manner of distribution and in choosing their distributors. *A.H. Cox & Co.*, 653 F.2d at 1306. The fact that TWA serves as both manufacturer and distributor does not change the Court's conclusion that TWA's restriction governing the distribution of its FFB award certificates does not violate § 1 of the Sherman Act. Accordingly, the Court grants summary judgment in favor of TWA on Count 1 of the counterclaim.

### 2. *Violation of 15 U.S.C. § 2*

Section 2 of the Sherman Act provides in part:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony.

To establish monopolization under § 2, ACE must prove that TWA has: "1) possession of monopoly power in the relevant market; 2) willful acquisition of maintenance of that power; and 3) causal 'antitrust' injury." *Transamerica Computer Co. v. IBM Corp.*, 698 F.2d 1377, 1382 (9th Cir.), *cert. denied*, 464 U.S. 955, 104 S.Ct. 370, 78 L.Ed.2d 329 (1983). To establish an attempt to monopolize, ACE must prove TWA's: "(1) specific intent to control prices or destroy competition with respect to a part of commerce; (2) predatory or anticompetitive conduct directed to accomplishing the unlawful purpose; (3) a dangerous probability of success; and (4) causal 'antitrust' injury." *Id.*

The Court has already held that no relevant product market for FFB certificates exists. Assuming, however, that mileage awards constitute the relevant market, it is uncontroverted that mileage certificates from TWA comprise only 5 percent of ACE's business. From this statistic it is clear that TWA does not have a monopoly on accumulated mileage awards. The Ninth Circuit recently ruled that a manufacturer who controlled 25 percent of the sales in the relevant market would not have the requisite monopoly power for purposes of a § 2 violation. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir.1987). Even if the Court were to assume the facts most favorable to ACE—that TWA has a monopoly on the specific market of FFB award certificates, as opposed to mileage awards in general—the Court's holding would not change. A company that has monopoly power may refuse to deal with a competitor in some manner and does not violate § 2 if a valid business reason for that refusal exists. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 604, 105 S.Ct. 2847, 2858, 86 L.Ed.2d 467 (1985); *see also, Bushie v. Stenocord Corp.*, 460 F.2d 116, 119–20 (9th Cir.1972) ("It is well settled that a manufacturer may discontinue dealing with a particular distributor for business reasons which are sufficient to the manufacturer, and adverse effect on the business of the distributor is immaterial in the absence of any arrangement restraining trade.")

TWA has set forth a number of valid business reasons in support of upholding the transfer restriction. First and foremost is the enforcement of TWA's tariffs. Second, TWA seeks enforcement of the policy behind the enactment of the FFB Program, namely, encouraging customer loyalty. Providing FFB certificates to persons who may have never flown TWA defeats this purpose. Third, TWA cites its financial interest in the FFB Program. TWA loses money every time a passenger using a brokered ticket avoids paying a full fare and occupies a seat which could have been occupied by one paying a full fare. Existence of the power to control the manufacture and sale of one's own products is not illegal monopoly power. *Industrial Building Materials, Inc. v. Interchemical Corp.*, 278 F.Supp. 938, 958 (C.D.Cal.1967), *rev'd on other grounds*, 437 F.2d 1336 (9th Cir.1971). That TWA controls the manufacture and distribution of its FFB certificates for legitimate business purposes is not violative of § 2 of the Sherman Act. Accordingly, the Court grants summary judgment on Count 2 of the counterclaim.

### 3. *Declaratory Relief*

ACE's third claim seeks a declaration that FFB award certificates may be freely bartered and sold. In view of the Court's ruling, summary judgment must be granted against ACE on this count.

### 4. *Interference with Business Relations*

ACE's final claim alleges that TWA has interfered with the relationship between ACE and FFB members by attempting to restrict the transfer of FFB certificates. In opposition to summary judgment on the complaint, ACE argued that the conduct of the party allegedly interfering must be wrongful to be actionable. *See Rickel v. Scwinn Bicycle Co.*, 144 Cal.App.3d at 657, 192 Cal.Rptr. 732. In this instance, TWA's conduct is not wrongful to the extent that it is attempting to enforce tariff provisions which ACE has already been held to have violated. The Court must therefore grant summary judgment against ACE on this count as well.

### 5. *Request for Discovery*

At the hearing, ACE requested a continuance pursuant to Rule 56(f) of the Fed.R.Civ.P. in order to conduct additional discovery. ACE sought documents and depositions from the sealed record of a related case in the Southern District of California. The Court ascertained from counsel for ACE that he had already seen these sealed documents. However, counsel could not inform the Court of what facts such discovery might add to ACE's opposition to summary judgment, with the exception of additional information about ARC. However, as has been shown, proof of an agreement between TWA and ARC would not change the Court's result on Count 1 of the counterclaim. Therefore, ACE's request is denied.

Furthermore, any attempt at amendment of the counterclaim would be futile. *See Rutman Wine Co.*, 829 F.2d at 738. It is clear that TWA's actions restricting the distribution of its FFB award certificates in no way violate the antitrust laws.

### CERTIFICATION FOR APPEAL, 28 U.S.C. § 1292(b)

When a district court files an order in a civil action which would otherwise not be appealable, § 1292(b) of Title 28 of the United States Code provides the Court of Appeals with jurisdiction if "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." The Court is mindful of the limited application of this provision. However, in view of the fact that this Order is dispositive of the liability issues of the case, and that this order may have far-reaching effects on the coupon brokering market in general, certification for appeal appears warranted. An appellate decision on the validity of the tariffs as well as other issues discussed herein will plainly advance the ultimate termination of this litigation.

The Court hereby orders all injunctive relief stayed pending appeal in this matter. Fed.R.Civ.P. 62(c).

The Status Conference is ordered continued to April 25, 1988, and the parties are ordered to file a timely report pursuant to Local Rule 6.4.2 of this District and to include therein the status of any appeal.

IT IS SO ORDERED.